No. 24-4304

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

MARILYN J. MOSBY,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Maryland, No. 1:22-cr-00007 (Griggsby, J.)

## MARILYN MOSBY'S OPPOSITION TO THE UNITED STATES'S MOTION FOR AN EXTENSION OF TIME TO FILE RESPONSE BRIEF

JAMES WYDA
MAGGIE GRACE
OFFICE OF THE FEDERAL
  PUBLIC DEFENDER
100 S. Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962

PARESH S. PATEL
CULLEN O. MACBETH
OFFICE OF THE FEDERAL
  PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

DANIEL S. VOLCHOK
CARRIE M. MONTGOMERY
NITISHA BARONIA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

ALAN SCHOENFELD
CHARLES C. BRIDGE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

August 26, 2024

The government's extension request should be denied because Ms. Mosby is detained at home as part of the sentence the district court imposed. (The government's motion never so much as discloses this central fact, instead misleadingly stating (Mot.4) that Ms. Mosby is "not imprisoned" and "now living at home on supervised release.") The government should not be allowed to delay the time when Ms. Mosby could obtain a reversal from this Court and thereby regain her physical liberty. Indeed, the district court opined just last week that Ms. Mosby has shown a likelihood of success on appeal. D.Ct. Dkt. 571 at 4. It is thus of upmost importance that this appeal proceed expeditiously. Although the government complains now about their other responsibilities and supposedly limited resources (a facially hard-to-accept claim from the United States government), they had no problem finding the resources necessary to take away Ms. Mosby's liberty. They assuredly can find the resources to comply (as Ms. Mosby did) with this Court's briefing schedule.

This Court's rules, moreover, say that the Court "discourages [extension] motions," and that *any* extension "will be granted only when extraordinary circumstances exist." Cir. R. 31(c). The bar should be even higher when an individual's physical liberty is at stake. Yet the grounds offered by the government—which has a documented history of asking this Court for extension after extension after extension for its briefs, *see infra* pp.6-7—are commonplace.

They do not remotely constitute "extraordinary circumstances" (a standard the motion never even mentions) much less anything sufficient to delay Ms. Mosby possibly regaining her full physical freedom. Put simply, a person's physical liberty outweighs any potential inconvenience to the government (again, even indulging the assumption that the United States somehow does not have enough lawyers to prepare its brief *without* inconvenience).

## BACKGROUND

Ms. Mosby was charged by the United States with two counts of perjury and two counts of mortgage fraud (with the latter counts based on seven alleged false statements). The perjury and mortgage-fraud charges were tried separately. Ms. Mosby was convicted on the perjury charges at the first trial; at the second, the jury convicted on one charge but acquitted on the other, and rejected the government's allegations as to six of the seven alleged false statements. D. Ct. Dkt. 474.

The government asked the district court to send Ms. Mosby to prison. But the court, noting that Ms. Mosby (who is divorced) has two minor daughters to care for, sentenced her to three years of supervised release, including one year (the first) of home detention. D. Ct. Dkt. 532. During that year, Ms. Mosby is allowed to leave her home only for certain specified tasks—and sometimes not even those. For example, although the judgment states that she can leave for employment purposes, the Probation Office *and the United States* opposed her leaving her home

for a documented employment opportunity out of state, and the court refused to allow the travel. D. Ct. Dkt. 561.

The district court also ordered forfeiture of a home Ms. Mosby had bought in Florida. D. Ct. Dkt. 529. Last week, the court denied Ms. Mosby's motion to stay the forfeiture pending appeal—but, in doing so, stated that Ms. Mosby "has shown a likelihood of success on appeal with regards to at least one of the arguments challenging her mortgage fraud conviction." D. Ct. Dkt. 571 at 4.

**ARGUMENT**

This Court's rules say both that "[t]he Court discourages [extension] motions" and that "[e]xtensions will be granted only when extraordinary circumstances exist." Cir. R. 31(c). The government never even cites these standards, no doubt because the grounds it gives for its request cannot in any sense be described as constituting "extraordinary circumstances." They do not suffice given Ms. Mosby's detention and her recognized likelihood of success on appeal.

1. The government states (Mot.3) that an extension is necessary because of one of its attorneys' "caseload." The government, that is, acts as though simply informing this Court that one of its attorneys has other matters and deadlines (not a single one of which the government identifies so that this Court could actually evaluate the claim) justifies more than *doubling* its briefing period—at the expense of Ms. Mosby's physical liberty. That is wrong. Litigators, both inside and

outside government, are (like judges) almost always juggling multiple cases and facing multiple deadlines. That is inherent in the job. It would drain the term "extraordinary circumstances" of meaning to say that it includes the everyday circumstance of having multiple contemporaneous deadlines.

This case illustrates that the government's other obligations are far from extraordinary. In the week before and the week after Ms. Mosby filed her opening brief on August 19 (without any extension), her lead appellate counsel has also had or shared lead responsibility for five other substantial filings—three of which were completed on an extremely short schedule. These included:

- A Ninth Circuit brief filed August 12 in *Mi Familia Vota v. Hobbs*, No. 24-3188 (lead), with only a 14-day briefing period;

- A New Hampshire Supreme Court reply brief filed August 15 in *Democratic National Committee v. Scanlan*, No. 2024-0247;

- A 50-page opposition to an emergency stay application filed August 16 with the U.S. Supreme Court in *Mi Familia Vota v. Hobbs*, No. 24A164, with only a 7-day briefing period;

- A complaint filed August 26 in Fulton County (Ga.) Superior Court in *Abhiraman v. State Election Board* (no case number yet assigned); and

- A brief due August 23 in the Pennsylvania Commonwealth Court in *Genser v. Butler County Board of Elections*, No. 1074 C.D. 2024, with a briefing period of under two days.

Despite these competing obligations (and others), Ms. Mosby's opening brief was filed on time, without any extension. The same should be expected of the United States.

2. Government counsel also points (Mot. 1-3) to the size of the record in this case and the fact that he has just been named the office's Appellate Chief. Neither point constitutes "extraordinary circumstances" sufficient to justify a further infringement of Ms. Mosby's physical freedom.

As to the former, the record is not inordinately large. This is not a multi-defendant matter, nor one in which trial ran for a month or more. There were only three days of testimony in the first trial and only eight days in the second. While there are assuredly many appeals with smaller records, there are likewise many with larger ones. And more importantly, Ms. Mosby's appellate counsel had to become familiar with the exact same record, in roughly the same amount of time as the government's appellate counsel. Ms. Mosby filed her notice of appeal nearly *three months ago*; the United States—which of course chose the scale of this prosecution—cannot now complain that the case is too complicated to complete its brief by the court's deadline.*

---

* In connection with its discussion of the record, the government's motion includes a lengthy footnote (Mot.2 n.1) complaining about the process by which the joint appendix for this appeal was prepared. Ms. Mosby is confident this Court has little interest in hearing counsel squabble. She thus notes only that the government

Nor is being named Appellate Chief an "extraordinary circumstance." Ms. Mosby's lead appellate counsel, for example, serves as vice chair of his firm's appellate group, and thus likewise has administrative responsibilities in addition to his dozens of cases.

3. The government's claims about needing an extension should be met with particular skepticism given the frequency with which this office requests extensions. A recent case illustrates the point. In *United States v. Thompson*, No. 23-4638 (4th Cir.), the government filed *five* extension motions for its brief (including two filed after it had already missed a filing deadline). *See Thompson* ECF 23, 25, 27, 29, 33. And time after time, the government pointed both to the press of business—thereby confirming that that is not an "extraordinary circumstance"—as well as other grounds (such as recently moving to Maryland, *Thompson* ECF 23 at 1, or recently moving "into a new house in a new neighborhood," *Thompson* ECF 29 at 2. While this Court eventually had enough, denying the government's fourth extension motion, *Thompson* ECF 30 (whereupon

---

(1) sent its appendix designations to Ms. Mosby without in any way indicating that she should take the exceedingly unusual (perhaps unprecedented) approach of filing the appendix containing the government's designations while leaving the government's signature block off the cover, and (2) has not sent any further appendix designations to Ms. Mosby as of the filing of this opposition, belying any notion that "the government's rights" (which in fact were fully honored) were "shortchang[ed]" (*id.*).

the government flouted the Court's denied by nonetheless not filing on the court-ordered deadline, *Thompson* ECF 31), the foregoing makes clear not only that this office can *always* point to something in claiming an extension is necessary, but also that it does not take seriously this Court's rules regarding the requirements for an extension.

4. Even if the grounds the government gives could constitute the requisite extraordinary circumstances in a case where a person's physical liberty was *not* at stake, that is not this case. As explained, Ms. Mosby is serving a year of home detention, with very limited ability to leave her house. She is not free, for example, to go grocery shopping, visit family, dine out, attend a friend's wedding, go out to exercise, attend a daughter's school event or take her daughters to the zoo, or do so many other things the rest of us take for granted in our daily lives. The point is not that these restrictions on Ms. Mosby's freedom are unjustified. The point is that Ms. Mosby *is* subject to them (because of the government's choice to pursue her), and she should not be subject to them longer than necessary solely because the government cannot find a way, despite its truly vast resources, to file its brief on time. Indeed, if the government is allowed to drag this appeal out, she will likely *complete* her period of home detention before this Court can rule, and the forfeiture of her home in Florida that the government seeks (her only significant asset now that this prosecution has largely ruined her financially) may

be completed. That would be deeply unjust. The government cannot use its unmatched leverage and power to restrict someone's freedom, and then demand that it be allowed to take its time defending its actions—thereby lengthening a person's loss of liberty. (As noted, the government's motion misleadingly states (at 4) that Ms. Mosby is "not imprisoned" and "now living at home on supervised release"—ignoring that she is under home *detention*.) Only truly extraordinary circumstances could warrant an extension in a case like this. As explained, there are no extraordinary circumstances here. It is not too much to require the government of the United States, having expended enormous resources to take away someone's liberty, to expend the effort and resources needed to meet the deadline this Court ordered, just as Ms. Mosby did.

## CONCLUSION

The government's extension request should be denied.

August 23, 2024

Respectfully submitted,

/s/ Daniel S. Volchok

| | |
|---|---|
| JAMES WYDA | DANIEL S. VOLCHOK |
| MAGGIE GRACE | CARRIE M. MONTGOMERY |
| OFFICE OF THE FEDERAL | NITISHA BARONIA |
|    PUBLIC DEFENDER | WILMER CUTLER PICKERING |
| 100 S. Charles Street |    HALE AND DORR LLP |
| Tower II, 9th Floor | 2100 Pennsylvania Avenue N.W. |
| Baltimore, Maryland 21201 | Washington, D.C. 20037 |
| (410) 962-3962 | (202) 663-6000 |
| | daniel.volchok@wilmerhale.com |

PARESH S. PATEL
CULLEN O. MACBETH
OFFICE OF THE FEDERAL
   PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

ALAN SCHOENFELD
CHARLES C. BRIDGE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

# CERTIFICATE OF COMPLIANCE

This opposition complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the opposition contains 1,845 words, excluding the portions exempted by Rule 32(f).

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

# CERTIFICATE OF SERVICE

On this 26th day of August, 2024, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK