# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARILYN J. MOSBY,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Maryland, No. 1:22-cr-00007 (Griggsby, J.)

## REPLY BRIEF FOR MARILYN J. MOSBY

JAMES WYDA
MAGGIE GRACE
OFFICE OF THE FEDERAL
   PUBLIC DEFENDER
100 S. Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962

PARESH S. PATEL
CULLEN O. MACBETH
OFFICE OF THE FEDERAL
   PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

DANIEL S. VOLCHOK
CARRIE M. MONTGOMERY
NITISHA BARONIA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

ALAN SCHOENFELD
CHARLES C. BRIDGE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

December 30, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT .................................................................................................................1

I.    PRESERVATION CHALLENGES ........................................................................1

II.   MORTGAGE-FRAUD CONVICTION ..................................................................8

      A.    Venue Instruction ............................................................................8

      B.    Venue-Evidence Sufficiency ...........................................................11

      C.    "Door-Opening" Ruling ..................................................................14

III.  PERJURY CONVICTIONS ................................................................................17

      A.    Adverse Financial Consequences......................................................17

      B.    Use Evidence ...................................................................................19

            1.    Relevance .............................................................................179

            2.    Undue Prejudice/Jury Confusion ...........................................21

            3.    Harmfulness .........................................................................23

IV.   FORFEITURE ..................................................................................................24

      A.    Statutory Authorization ...................................................................24

      B.    Excessiveness ..................................................................................26

CONCLUSION .............................................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006) ...................................................22

*Cone v. Bell*, 556 U.S. 449 (2009) ..............................................................................22

*Henderson v. Kibbe*, 431 U.S. 145 (1977)....................................................................2

*Jones v. United States*, 527 U.S. 373 (1999) ...............................................................2

*Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021)..........................................................10

*Reass v. United States*, 99 F.2d 752 (4th Cir. 1938)..............................................9, 10

*Smith v. United States*, 599 U.S. 236 (2023) ...............................................................3

*United States v. Alvarez-Sanchez*, 511 U.S. 350 (1994).............................................21

*United States v. Arbaugh*, 951 F.3d 167 (4th Cir. 2020) .............................................3

*United States v. Bajakajian*, 524 U.S. 321 (1998).....................................................26

*United States v. Blake*, 571 F.3d 331 (4th Cir. 2009)................................................14

*United States v. Blecker*, 657 F.2d 629 (4th Cir. 1981).............................................10

*United States v. Boyd*, 5 F.4th 550 (4th Cir. 2021).....................................................7

*United States v. Brown*, 811 F.App'x 818 (4th Cir. 2020) ..........................................4

*United States v. Cowden*, 882 F.3d 464 (4th Cir. 2018).............................................2

*United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005)............................................2

*United States v. Gallagher*, 90 F.4th 182 (4th Cir. 2024) ........................................15

*United States v. Johnson*, 956 F.3d 510 (8th Cir. 2020)............................................13

*United States v. Mallory*, 337 F.Supp.3d 621 (E.D. Va. 2018) ...............................13

*United States v. Manapat*, 928 F.2d 1097 (11th Cir. 1991)................................. 17-18

*United States v. McCabe*, 103 F.4th 259 (4th Cir. 2024) ........................................2

*United States v. Powers*, 40 F.4th 129 (4th Cir. 2022) ...........................................14

*United States v. Smith*, 29 F.3d 914 (4th Cir. 1994) .................................................9

*United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017) ...................................10, 13

*United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001) ............................................1

*United States v. Watkins*, 111 F.4th 300 (4th Cir. 2024) ..........................................4

*Williams v. United States*, 458 U.S. 279 (1982) ......................................................9

## STATUTES AND RULES

8 U.S.C. §1014 ...............................................................................................9

Federal Rule of Criminal Procedure
     12 ...............................................................................................8
     29 ...............................................................................................3
     30 ...........................................................................................1, 2

## OTHER AUTHORITIES

2A Wright, Charles Alan & Arthur R. Miller, *Federal Practice & Procedure Criminal* (4th ed. 2024) ................................................4

Appellee offers no legitimate basis to affirm any of the convictions or the forfeiture order.  Appellee devotes substantial space to preservation arguments that are unsupported by either precedent or any sound rationale.  And when it turns to the merits, appellee repeatedly ignores key points that appellant Marilyn Mosby made as to why the district court's challenged rulings were both erroneous and harmful.  All of the convictions and the forfeiture order should be set aside.

## ARGUMENT

### I.  PRESERVATION CHALLENGES

Preservation requirements ensure that district courts can promptly correct any errors and are not sandbagged on appeal.  *United States v. Stewart*, 256 F.3d 231, 238-239 (4th Cir. 2001).  But preservation is not a game, with tricky or senseless rules that trap conscientious litigants.  That is the regime appellee espouses, raising myriad preservation challenges that are all meritless (and indeed mostly frivolous).  They should be rejected.

A.  Appellee claims (Br.23-24) that Ms. Mosby's challenge to the district court's act-in-furtherance venue instruction is forfeited because she did not object after the jury was instructed.  But Federal Rule of Criminal Procedure 30(d) requires only that instructional objections be made "before the jury retires."  As appellee admits (Br.24 n.7), Ms. Mosby did so, objecting "at the charge conference" and again in writing "before [the instruction] was delivered."  That

suffices because Rule 30 does not say, as appellee posits, that objections made before jurors retire must be *repeated* after objected-to instructions are given. Such a requirement—for which appellee offers no rationale—would be atextual (which suffices to reject it) and would needlessly burden courts with futile repetition of objections already considered. That is not the rule's function. *See Jones v. United States*, 527 U.S. 373, 388 (1999); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

A post-delivery objection *is* required if an objection raised on appeal was not made pre-delivery. In that circumstance, nothing pre-delivery "inform[ed] the court of the specific objection … before the jury retire[d]," Fed. R. Crim. P. 30(d), so a post-delivery-objection requirement comports with the rule's text. That was the situation in appellee's cited cases (Br.23-24), including one where the defendant made *no* "specific objections to the jury instructions," *United States v. McCabe*, 103 F.4th 259, 278 (4th Cir. 2024) (subsequent history omitted), and others where a defendant proposed one instruction but never *objected* to the instruction given, *e.g.*, *United States v. Cowden*, 882 F.3d 464, 475 (4th Cir. 2018). It is not the situation here: As appellee recognizes (Br.24 n.7), Ms. Mosby's objection on appeal is the same objection made pre-delivery. It is thus preserved. *United States v. Ebersole*, 411 F.3d 517, 524 n.8, 526, 530 (4th Cir. 2005).

B.     Appellee's argument that Ms. Mosby waived her challenge to the sufficiency of the venue evidence largely attacks a strawman. Appellee asserts

(Br.15) that any sufficiency challenge to "the jury's venue finding" is waived. That is not Ms. Mosby's challenge. She challenges the denial of the venue-based motion for judgment of acquittal she made at the close of prosecutors' case-in-chief, JA213-223, a motion on which the district court deferred ruling until after trial under Federal Rule of Criminal Procedure 29(b), JA2682. Appellee admits that this is Ms. Mosby's challenge (Br.14 (citing Opening Br. ("OB") 27)), yet it wastes this Court's time arguing forfeiture of an argument not made.

As to Ms. Mosby's actual challenge, appellee contends (Br.15 n.3) that a court that reserves ruling on an acquittal motion filed after the case-in-chief cannot then "overturn[] a jury's … venue finding based on the insufficiency of the case-in-chief." This contention is made only in a footnote, so it (like appellee's other footnote-only arguments) is forfeited. *E.g.*, *United States v. Arbaugh*, 951 F.3d 167, 174 n.2 (4th Cir. 2020). That aside, Rule 29(b) commands that "[i]f the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Appellee argues, however (Br.15 n.3), that Rule 29 covers an offense's "elements," not venue. But appellee cites no case imposing that atextual limitation (the rule never mentions elements); Supreme Court precedent that appellee itself cites involved a Rule 29 motion "based on improper venue," *Smith v. United States*, 599 U.S. 236, 240 (2023); and it is black-letter law that a Rule 29 motion "raising the sufficiency of proof of venue can be made at the

end of the government's case," 2A Wright & Miller, *Federal Practice & Procedure Criminal* §466 (4th ed. 2024); *see also United States v. Brown*, 811 F.App'x 818, 822 (4th Cir. 2020) (per curiam).

Appellee's remaining scattershot points likewise fail.

Appellee suggests (Br.13) that Ms. Mosby "needed to [re-]raise her challenge 'at the close of all the evidence' to preserve it." Appellee cites no case imposing such a requirement, nor offers any rationale for it. Appellee also argues (Br.16) that by putting on evidence after the court reserved ruling on her acquittal motion, Ms. Mosby waived the case-in-chief venue challenge. Again, appellee cites no supporting authority; the case it cites (like the cases that case cites) holds that if an acquittal motion made at the close of the case-in-chief is denied *when made*, then a defendant who puts on a defense cannot challenge that denial. *United States v. Watkins*, 111 F.4th 300, 307 (4th Cir. 2024). That is not the situation here, and appellee offers no rationale for extending that rule to this situation. Finally, appellee argues (Br.15) that Ms. Mosby "waive[d] her preservation argument by not raising it in her opening brief." That is preposterous—and once more, no case so holds. Opening briefs must present challenges to district courts' adverse rulings. The district court's relevant adverse rulings here were all on the merits, so Ms. Mosby's opening brief addressed those merits rejections. Appellee's preferred regime would require appellants to preemptively argue at

length in opening briefs against preservation challenges that have not been made and might well never be. That is nonsensical.

      C.      Appellee's preservation argument regarding Ms. Mosby's challenge to the district court's ruling that prosecutors could cross-examine her at length (and argue in closing about) the facts of the perjury convictions is baseless. When prosecutors first argued that Ms. Mosby's direct testimony opened the door to additional cross-examination, she explained why they were wrong. JA2098-2099. Appellee says (Br.31) that she "objected only to *the degree* to which she had opened the door." Not so; her argument equally supported the position that the door had not been opened, period. The district court evidently agreed, saying "I hear your points," but "the door is open." JA2100.

      Ms. Mosby immediately reiterated her position, stating, "this was a fairly limited intrusion on … the prior case." JA2101. Appellee insists (Br.30) that this statement "conceded" that the testimony "open[ed] the door." In fact, it conveyed that the one sentence was *such* a "limited intrusion" that it opened no door. But with the court having rejected that position (and with the objection preserved), counsel also offered various alternatives. JA2101-2102. At no point did counsel even arguably withdraw the objection. To the contrary, counsel reiterated it again after the parties, having heard the court's door-opening ruling, conferred off-the-

record about next steps:  Back on the record, counsel—citing supporting caselaw—"renew[ed] our objection that Ms. Mosby opened the door."  JA2107.

This third objection was neither untimely nor "*new*" (U.S. Br.32); the district court certainly did not say it was either.  Appellee feebly suggests (*id.*) that that is because "the court appears to have missed" the objection.  In reality, immediately after counsel stated, "we wanted to preserve our record for appeal," the court acknowledged that, responding:  "Thank you very much, Mr. Wyda."  JA2107.  Appellee cannot prevail by contorting the record.

Even if counsel's third objection was new, it was timely and thus preserved this issue.  Disputing this, appellee says (Br.32) that the objection was made "*hours later*."  But no trial proceedings occurred during those "hours"; that was when the parties discussed—at the court's behest, JA2103—how to proceed given the door-was-opened ruling.  JA2103-2107.  Appellee cites no authority for the proposition that an objection made after a recess that follows a ruling but before challenged evidence is introduced is untimely.  The third objection fulfilled the contemporaneous-objection rule's purposes, *see supra* p.1.

If Ms. Mosby's three oral objections were insufficient, moreover, she filed, on the same day, a written motion repeating "her objection" to the court's ruling that "Ms. Mosby opened the door," JA225 n.1.  This motion—which appellee cites in its merits sub-section (Br.32-33) but *never mentions* in arguing forfeiture—

leaves no doubt that appellee's preservation argument is baseless. Indeed, objecting "in writing" by itself preserved the issue. *United States v. Boyd*, 5 F.4th 550, 554 (4th Cir. 2021).

The motion also urged the district court to limit prosecutors' cross-examination. JA224. It thus defeats appellee's claim (Br.31) that Ms. Mosby waived her challenge to the scope of cross-examination by accepting the district court's suggestion (JA2103) to formulate a plan with prosecutors on how the cross would proceed. Again, by objecting in writing, Ms. Mosby preserved the issue; her obeying of the court's suggestion to discuss how to proceed *given that* (objected-to) ruling did not withdraw the objection. Ms. Mosby certainly never "demonstrate[d] clear abandonment" of her objections, *Boyd*, 5 F.4th at 555, as required for waiver (and as occurred in appellee's cited cases (Br.13, 31)). To the contrary, she continued objecting during the cross-examination—and was cut off by the court. JA2120. The notion that all of this was inadequate is untenable. Consistent with this Court's precedent, Ms. Mosby "opted not to waste the court's time" with further futile objections, "especially in light of the court's expressed view" that the door had been opened. *Boyd*, 5 F.4th at 555. That did not waive the multiple objections she had already made.

D.     Appellee argues that Ms. Mosby waived her argument that the statutory phrase "adverse financial consequences," or AFC, is fundamentally

ambiguous and thus cannot underpin a perjury conviction. According to appellee (Br.36), she waived the argument "by filing an 'untimely' motion and failing to … show[] 'good cause' for its untimeliness." That is frivolous. Ms. Mosby sought leave to move to dismiss on this ground, explaining why good cause to grant leave existed. D.Ct. Dkt.67. And the district court granted leave, finding "good cause." D.Ct. Dkt.69. Appellee discloses none of this—and in fact misleadingly states (Br.8) that Ms. Mosby's *motion to dismiss and reply* did not argue good cause, ignoring that her *motion for leave* did so, and that the court found good cause. That preserved the issue. *See* Fed. R. Crim. P. 12(c)(3).

Appellee relatedly asserts (Br.44) that Ms. Mosby's argument that AFC includes no minimum dollar threshold is unpreserved. Wrong: Ms. Mosby argued below that "the statute does not require 'substantial' consequences—any adverse financial consequences will do." JA76.

## II. MORTGAGE-FRAUD CONVICTION

Jurors at the mortgage-fraud trial rejected almost all of prosecutors' severe mis-charging. Appellee's effort to preserve the one conviction they secured (by inducing multiple errors) lacks merit.

### A. Venue Instruction

1. Appellee argues (Br.25) that the district court's act-in-furtherance venue instruction was correct because, for *any* false-statement crime, "venue is

proper in any district where [a] false statement was 'made or prepared.'" This Court rejected that argument in *Reass v. United States*, 99 F.2d 752 (4th Cir. 1938), holding under the predecessor to 18 U.S.C. §1014 that the "assembling of [allegedly false] material" *cannot* support venue for a loan-fraud charge, that "it is only when [the allegedly false statements] are communicated to the lending bank that the crime" occurs, 99 F.2d at 755. That forecloses appellee's argument (Br.26) that here, "drafting and signing the [gift] letter [we]re essential parts of" the mortgage-fraud charge.

Tacitly acknowledging as much, appellee contends (Br.27 n.10) that *Reass* was abrogated by *Williams v. United States*, 458 U.S. 279 (1982). That footnote-only argument is forfeited. It is also wrong, as shown by the case appellee cites, *United States v. Smith*, 29 F.3d 914 (4th Cir. 1994). As *Smith* explained, *Williams* clarified that a §1014 offense can rest on "a knowingly false statement or report made to anyone," not just a bank. 29 F.3d at 917. Such a statement must, however, still be "made" to *someone*. Accordingly, *Williams* does not disturb *Reass*'s holding that under §1014's predecessor—the relevant language of which remains in the current statute, *see Williams*, 458 U.S. 288—"it is only when

[statements] are communicated … that the crime" occurs, 99 F.2d at 755. That holding therefore remains binding.[*]

Equally infirm is appellee's attempt to evade *United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017), arguing (Br.27-28) that preparatory acts "are not acts 'in furtherance of'" a crime, and that *Sterling*'s contrary holding was "dictum." *Sterling* did deem the instructional error there harmless because the district court's "additional guidance" provided the correct law. 860 F.3d at 245. But *Sterling* addressed harmlessness only after holding that "the district court's [act-in-furtherance] instruction erroneously allowed the jury to find proper venue based on a finding that *any* preparatory act occurred in the" relevant district. *Id.* That ruling of "erro[r]," *id.*, was not dictum, i.e., not a "peripheral" statement, *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021). And together with *Reass*, it makes clear that the district court here erred in giving what appellee never denies is virtually the same venue instruction given in *Sterling*—but *without* any curative "additional guidance." OB.26.

2.  Though never denying that it must show harmlessness beyond a reasonable doubt if the objection was preserved, OB.21, appellee argues (Br.28-29)

---

[*] Appellee also cites (Br.25-27) *United States v. Blecker*, 657 F.2d 629 (4th Cir. 1981), but *Blecker* involved a "clearly distinct context," and a different statute, than *Reass*, *id.* at 633.

that any error was harmless because "everything Mosby did to the gift letter she did on February 9 and 10, 2021, while in Maryland." But the evidence that Ms. Mosby was in Maryland on those dates is not even legally sufficient. *See infra* pp.11-14; OB.27-30. There is no serious argument that it "compelled" (U.S. Br.29) a finding that she was there then. Indeed, appellee ignores Ms. Mosby's argument (OB.26) that nothing precluded reasonable jurors from finding that she prepared the letter in Maryland but submitted it later, e.g., after flying to Florida for the closing. That silence leaves no doubt that the stringent beyond-a-reasonable-doubt harmlessness standard is not satisfied.

### B.    Venue-Evidence Sufficiency

The parties' briefs tee up a clear legal question: Can a reasonable jury find that a person was in a jurisdiction on a particular date when there is evidence that she was regularly there in the weeks and months around that date (including because she lived and worked there), but there is no date-specific evidence that she was there on that particular date? That is the question because neither side disputes the relevant facts the other side relies on. Ms. Mosby does not deny that she lived, worked, and made electronic transactions in Maryland in and around February 2011. *See* U.S. Br.17-19. And appellee does not deny that its case-in-chief included none of the many types of date-specific evidence that could have placed her in Maryland on February 10, 2021. OB.27. (Appellee rightly does not

defend the district court's improper reliance, JA302, on *Nick* Mosby's banking transactions on that date. OB.29.)

Courts—including this Court in *Sterling*—have held that by itself, presence in a jurisdiction around a particular date is by itself insufficient. OB.28-29. That is the proper rule for two related reasons.

The first is the paramount importance of the venue right, which Ms. Mosby explained (OB.22-23) and which appellee never denies. Such a fundamental constitutional right cannot be overcome—and a person subjected to the severe circumstance of criminal prosecution—based on what is essentially a probability analysis, nothing more than "defendant was there a lot of the time, and from that alone you can infer she was there on any particular date." Indeed, under appellee's view, everyone can always be prosecuted in the jurisdiction where they live or work, unless they affirmatively *dis*prove venue for a particular offense. That is not the regime the Framers created.

Second, the total absence of any date-specific evidence that a person was in a jurisdiction makes it unreasonable to infer solely from regular presence during a general timeframe that the person was there on a particular date. There are so many ways that location can be pinpointed nowadays—public cameras, cell-phone tracking, bank or other electronic transactions, computer IP addresses, highway toll records, and so on—that if prosecutors cannot produce *any* date-specific evidence

putting a person in the relevant location, a finding that the person was there is simply a bridge too far.

Again, *Sterling* recognized this. Appellee contends, however (Br.22), that the "problem" in *Sterling* was that "the evidence showed the defendant committing only a single act in the district that perhaps had nothing to do with the crime." That is wrong. Like Ms. Mosby, Jeffrey Sterling lived in the relevant district, and prosecutors attempted to draw from that an inference that he must have started transmitting classified information there. 860 F.3d at 244. But this Court held (as a district court later explained) that "[w]ithout direct evidence, the government must provide an 'evidentiary hook,' such as evidence of how or where defendant made similar transmissions in the past, to enable the jury to infer that." *United States v. Mallory*, 337 F.Supp.3d 621, 628 (E.D. Va. 2018) (quoting *Sterling*, 860 F.3d at 244). In other words, probabilistic guesswork is not enough.

Appellee also bases its request for a probability-based venue regime on *United States v. Johnson*, 956 F.3d 510 (8th Cir. 2020). But *Johnson*'s holding that venue in Minnesota could be inferred from "evidence that Johnson lived, worked, and spent most of his time in Minnesota," without evidence of his presence in Minnesota on the relevant date, *id.* at 518, cannot be squared with *Sterling*. *Johnson* therefore cannot be followed—and in any event should not be:

For the reasons given, its analysis is insufficiently protective of the constitutional protection the Founders twice enshrined in the Constitution.

Finally, appellee attempts to shift the burden of proof to Ms. Mosby, faulting her (Br.20-21) for not adducing evidence "that she left Maryland." It was of course not her burden to disprove venue, *United States v. Powers*, 40 F.4th 129, 134 (4th Cir. 2022)—certainly not during the case-in-chief.

### C.    "Door-Opening" Ruling

1.    The district court reversibly erred by ruling that Ms. Mosby's statement on direct that "I regret not testifying before, and I want this jury to hear my truth," JA2089, warranted extensive cross-examination about the facts underlying the perjury convictions. In response, appellee claims (Br.32) that Ms. Mosby "thought that she had opened the door." As explained, counsel said no such thing, arguing that she had not, *e.g.*, JA2107. Appellee also contends (Br.32) that Ms. Mosby "tried to 'undermine confidence' in her conviction by calling into question its underlying facts." Not so—which is why appellee never explains *how* the single sentence of testimony that prosecutors claimed opened the door, JA2089, constitutes calling into question its underlying facts. Indeed, that sentence never even mentions any "underlying facts." There thus was no "'attack'" on those facts that it would have been "'unfair'" to prevent prosecutors from answering. U.S. Br.32-33 (quoting *United States v. Blake*, 571 F.3d 331, 348 (4th Cir. 2009)).

Appellee, meanwhile, does not address Ms. Mosby's argument (OB.33-34) that her single sentence is not remotely like what this Court has held opened a door. Nor does it answer Ms. Mosby's argument (OB.34) that under this Court's precedent, even when a defendant opens the door, the response must be tailored, and that here it was not. Appellee's silence on these key points is telling.

Instead, appellee argues (Br.33) that the "perjury conviction was admissible because it is 'peculiarly probative of … credibility.'" It is not admission of the "conviction[s]" that is challenged here, however, but the extensive cross-examination and argument about the underlying facts—which the district court itself had recognized pre-trial would be highly prejudicial, JA199; JA203-205.

At bottom, appellee cannot present a coherent explanation for how expressing regret for not testifying before and wanting to avoid repeating that mistake remotely conveyed any message about the underlying facts of the prior trial—facts Ms. Mosby never mentioned. There is no coherent explanation, and the district court abused its discretion in reversing its pre-trial ruling and allowing prosecutors to engage in protracted and highly prejudicial cross-examination and argument.

2. Appellee never mentions the "three decisive factors" for determining harmlessness, *United States v. Gallagher*, 90 F.4th 182, 197 (4th Cir. 2024)—all of which show the district court's error was harmful, OB.34-38. Appellee's failure to

respond to virtually all of Ms. Mosby's harmlessness arguments is dispositive. The little it does offer is without merit.

Specifically, appellee largely reverts to misguided preservation arguments. For example, Ms. Mosby argued (OB.36-37) that the district court's self-contradictory jury instruction and prosecutors' misuse of the relevant evidence in closing show there was no effective mitigation of the error—one of the harmlessness factors. Appellee responds (Br.35) that neither instruction nor closing can be its own "claim[] of error," because neither was objected to below. But Ms. Mosby is not claiming a standalone error as to either, instead invoking each to establish "non-harmlessness," *id.* Appellee cites no case holding (nor any rationale for a rule) that such an argument—or harmlessness arguments generally, which obviously cannot be presented to a district court—can be forfeited.

Similarly baseless is appellee's claim (Br.35) that Ms. Mosby "says that the cross-examination was 'unduly prejudicial,'" but that "she waived any Rule 403 argument by agreeing … to the questions." As to the latter point, Ms. Mosby's argument is preserved for the reasons already given. *See* pp.5-7. And as to the former, "unduly prejudicial" comes from this Court's precedent; Ms. Mosby quoted it in noting (OB.36-37) that this Court has rejected a harmlessness argument under circumstances like those here. Appellee notably says nothing about that critical point.

Appellee's only other arguments (Br.34-35) are that there was overwhelming evidence of guilt and that the jury acquitted on six of the seven charged false statements. Neither of those (inconsistent) arguments has merit. As to the latter, the split verdict shows this was a close case; admission of the challenged evidence thus could easily have been why jurors convicted at all. And as to the former, simply affixing the label "overwhelming" does not make it so. Nor does appellee's citing its own description of the offense of conviction (Br.6)—a description that nowhere *mentions* the critical issue, Ms. Mosby's knowledge. Appellee's description focuses instead on the separate falsity element, largely ignoring Ms. Mosby's argument (OB.35-36) that no evidence showed that she *knowingly* made a false statement. The little appellee says about knowledge, moreover (Br.34-35), shows the issue was a credibility battle, which underscores that Ms. Mosby's credibility was central, and hence that the challenged ruling was harmful.

## III. PERJURY CONVICTIONS

### A. Adverse Financial Consequences

Appellee correctly notes (Br.38) that the issue here is whether the relevant certification as a whole was ambiguous. But that does not mean Ms. Mosby had to "challenge as ambiguous the certification's four enumerated events" (*id.*), or, more generally, show that every part of the certification was ambiguous, *see United*

*States v. Manapat*, 928 F.2d 1097, 1101 (11th Cir. 1991).  Ms. Mosby explained (OB.40-41) why the key phrase (AFC) is fundamentally ambiguous, and why the enumerated events—the only possible source of clarification appellee points to (Br.38-39)—do not eliminate that ambiguity.  Appellee offers no reason why that is not an argument that the certification as a whole is fundamentally ambiguous.

Instead, appellee argues waiver on appeal, saying (Br.39) that Ms. Mosby's argument about the enumerated events is undeveloped.  That is wrong.  Ms. Mosby explained (OB.41) that the events "limited the *sources* of qualifying 'adverse financial consequences,' but did nothing to clarify the meaning of that term," i.e., did not resolve any of the ambiguity that her brief had just spent pages laying out.  Appellee does not explain why that isn't a full response.

Next, appellee notes (Br.39) that if Ms. Mosby experienced none of the four enumerated events, then any ambiguity in "AFC" would not matter.  That is true but irrelevant:  Ms. Mosby argued below that she did experience one, OB.41; JA44; JA54-55.

Appellee also asserts (Br.40) that it does not matter that AFC was not defined anywhere, because "that is not the standard."  But Ms. Mosby never argued that the lack of a definition alone rendered AFC fundamentally ambiguous.  She argued (OB.40) that it is a key point supporting that conclusion.  Appellee has nothing to say about that—or about the related point that experts recognized the

ambiguity contemporaneously (*id.*). Instead, appellee notes that this Court once used the phrase "AFC." But appellee offers no logic or authority for the notion that a phrase's appearance in a judicial opinion makes the phrase clear enough to underpin a perjury conviction.

Finally, appellee says (Br.41) that Ms. Mosby could not have experienced AFC even "under *her most expansive* interpretation" of the term, because that interpretation (OB.41) involved adverse consequences to a business that she was not operating at the time of the certifications. That argument fails because the certification form referred to a business that the signer "own[ed] *or* operate[d]." JA44 (emphasis added). Ms. Mosby incorporated her businesses in 2019, U.S. Br.4, and still owned them at the time of her certifications.

### B. Use Evidence

### 1. *Relevance*

Appellee asserts (Br.43) that the evidence that Ms. Mosby used withdrawals from her retirement account to make down payments on the Florida homes was relevant because it helped show that she did not suffer AFC. But appellee never explains how it helped show that, simply offering the conclusion that the evidence "was relevant" (*id.*). That does not respond to Ms. Mosby's central points: The statutory phrase "adverse financial consequences" has no minimum dollar threshold, and the down payments were made weeks or months after Ms. Mosby

certified having suffered AFC.  OB.43-44.  Both points are also missing from appellee's hypothetical (Br.43-44), rendering it inapposite.

In fact, appellee addresses these points only in a footnote, which waives the argument.  The argument also fails:  Appellee says (Br.44 n.16) that "[n]o ordinary English speaker would say that someone who lost their pocket change months ago suffered" AFC.  But of course someone would say that a loss could constitute AFC despite occurring "months ago."  Why couldn't it?  Appellee never explains.  Meanwhile, appellee's claim about "pocket change" lacks merit for two reasons.  First, Ms. Mosby's argument does not depend on AFC encompassing literal pocket change (although it does); AFC certainly encompasses someone losing $100 or $500—losses that are entirely consistent with that person having the ability (and choosing) to use funds for down payments weeks or months later.  Second, appellee offers nothing to support its *ipse dixit* that AFC includes an (atextual) minimum threshold.  Congress could have imposed a threshold, by either defining the term or adding a modifier to AFC like "substantial" or "significant."  It did neither, and appellee cannot add what Congress omitted—particularly with a term being used for criminal prosecution.

Appellee also carps (Br.44) that Ms. Mosby's no-minimum-threshold argument "minimizes" the evidence's probative value.  That is bizarre.  Her argument concerns statutory construction, not evidence:  Ms. Mosby explained

(OB.44) that the district court's relevance ruling made no sense given that the statutory term AFC can encompass exceedingly small losses. She did not even refer to any evidence in making the argument. Nor does appellee discuss any evidence in voicing this complaint, i.e., does not explain how it thinks the evidence at issue should be treated. Appellee's confused argument should be disregarded.

Finally, appellee's one-sentence argument (Br.44 n.15) that the evidence was relevant to show motive is doubly forfeited. It was never made below, *see e.g.*, *United States v. Alvarez-Sanchez*, 511 U.S. 350, 360 n.5 (1994) (citing cases), and appears here only in a footnote.

### 2. Undue Prejudice/Jury Confusion

Appellee offers no argument that the risk of undue prejudice from the use evidence substantially outweighed any probative value it had. Appellee simply describes Ms. Mosby's argument, recites the undue-prejudice standard, declares there was no undue prejudice, and jumps to harmlessness. Br.45. While appellee later jumps back to the merits to mention its closing argument—which, Ms. Mosby explained, starkly illustrates the undue prejudice (OB.45-46)—it says only that a challenge to the closing is waived (Br.46). But Ms. Mosby is not claiming the closing constitutes reversible error (as in the case appellee cites). She cited them to illustrate the error of the ruling she is challenging, a challenge appellee does not dispute is preserved.

Put simply, Ms. Mosby's undue-prejudice argument stands unanswered.

No better is appellee's response to Ms. Mosby's jury-confusion argument. For starters, although appellee denies that the district court never considered this argument (*see* OB.47), it cites only (Br.43 n.14) the court noting that Ms. Mosby *made* the argument. Appellee cites nothing showing that the court addressed the argument. Nor does it answer Ms. Mosby's argument (OB.47) that under this Court's precedent, that alone constitutes an abuse of discretion.

If the Court nonetheless considers appellee's jury-confusion argument the argument should be rejected. (Review would be de novo, as there is no district-court reasoning to defer to. *Bangura v. Hansen*, 434 F.3d 487, 497 (6th Cir. 2006); *cf. Cone v. Bell*, 556 U.S. 449, 472 (2009).) Appellee contends (Br.46) that there could be no confusion because jurors are presumed to follow instructions. That is unresponsive to the argument (OB.49) that jurors here were not instructed that funds could be used for any purpose. Appellee does dispute that, but only in a footnote (Br.46 n.17). That forfeits the argument, but regardless appellee is wrong: It claims jurors "were instructed that [Ms. Mosby] could withdraw (and thus use) the funds 'without regard to her need for'" them. *Id.* But the instruction addressed *only* withdrawals, i.e., "distributions." JA902. It did not—unlike Ms. Mosby's proposed instruction that the district court rejected—say there were no limits on *usage*. OB.49. It thus did not prevent potential jury confusion.

3.      *Harmfulness*

Appellee again virtually ignores this Court's three harmfulness factors, confirming that they show harm here. Appellee says only (Br.46 n.17) that Ms. Mosby, in arguing harmlessness, cannot point to the jury instruction that was given (and the one she proposed that was rejected) because she has not "develop[ed] it as an independent claim." This footnote-only argument is forfeited and meritless. Again, something need not be challenged as a standalone error to support a harmfulness argument. Despite repeatedly suggesting otherwise, appellee never cites any authority for that counterintuitive notion.

Appellee's only other harmlessness argument is that the use evidence was introduced at the mortgage-fraud trial, yet that jury acquitted on most of the charges. That is hard to take seriously. The harmfulness standard is not whether evidence is so harmful that any juror hearing it in any trial would automatically convict on any charge. The mortgage-fraud trial had different jurors who heard different charges, different evidence, and different opening statements and closing arguments. What those jurors did with that evidentiary presentation says nothing about the effect the use evidence had on the perjury-trial jury. Regardless, appellee's argument fails on its own terms, as appellee has no basis to dispute that it was only the use evidence that led the mortgage-fraud jury to convict of anything. All this shows that appellee posits the wrong analysis. What matters are

the three factors this Court has deemed decisive—about which, again, appellee has almost nothing to say.

## IV. FORFEITURE

### A. Statutory Authorization

Appellee concedes (Br.47) that to obtain a forfeiture order, prosecutors had to prove that Ms. Mosby would not have obtained the relevant property "but for" the $5,000 gift letter. They did not, presenting only an underwriter's testimony that the letter "ma[d]e sure" there were "funds to close" *as scheduled*, JA1316, i.e., that gift letters can "speed up" a closing, JA1315. Contrary to the district court's statement, JA2520-2521, the underwriter never testified (nor did anyone else) that the mortgage would have fallen through without the letter. Such a scenario is wholly implausible, given that Ms. Mosby received her paycheck for essentially the same amount as the gift letter two days after the letter was submitted—and a week before the closing, JA2747; JA2762. There is no basis to conclude that Ms. Mosby's paycheck could not or would not have supplied the necessary funds in lieu of the letter. Again, no testimony or other evidence supports that conclusion.

Appellee responds (Br.48) that this is "speculation" because no "witness hinted that the mortgage lender would have accepted a regular paycheck." But the notion that a lender who accepted a *promise* to give Ms. Mosby money would not have accepted her *having* the money (via a government paycheck) is not credible.

Neither is appellee's argument (*id.*) that there must have been "a problem with her using the paycheck," because she used the gift letter. The only "problem" was that the paycheck was not received until two days after the gift letter was submitted. Again, that does nothing to show that it would not have enabled the mortgage to close upon arrival.

Perhaps recognizing this, appellee tries to shift its burden to Ms. Mosby, faulting her (Br.49) for not "show[ing]" below "that she would have still obtained the mortgage by waiting for her new paycheck." That burden-shifting should be rejected. So should appellee's suggestion (Br.50) that Ms. Mosby seeks "to turn 'but for' causation into 'only possible means' causation." Her argument rests on the but-for definition appellee presents (Br.48): "change one thing at a time and see if the outcome changes." Appellee never proved that changing "one thing" (use of the gift letter) would have yielded the different "outcome" (the home purchase never happening).

Appellee also speculates (Br.49) that "the lender was not interested in taking new snapshots of [Ms. Mosby's] account balance" or could not have timely "reaudited" her. The district court did not credit these arguments, and no testimony supports either; appellee's only basis for them (*id.*) is that the lender did not "update Mosby's bank-account balance" before the closing. But no "updating" was needed because Ms. Mosby showed adequate funds. That does nothing to

support a conclusion that the lender would not have taken the required steps to close later (and thus earn its fee) had there been a need to do so.

Finally, appellee offers the truly strained argument (Br.49-50) that the paycheck would not have sufficed because it was $22.15 less than $5,000. Again, the district court did not embrace this argument, likely because it is beyond implausible that such a trivial amount would have prevented the mortgage from closing. Indeed, after receiving her paycheck, Ms. Mosby transferred $5,000 (*not* $22.15 less) to her then-husband, showing that she had the full $5,000 available. OB.52; JA357 n.*. That fact also refutes appellee's conjecture (Br.49-50) that Ms. Mosby's contemporaneous spending "call[s] into doubt whether she could have shown $5,000." She showed precisely that amount.

Put simply, even if prosecutors established that, but for the gift letter, the closing would not have happened as scheduled, that does not show—as prosecutors had to—that it would not have happened at all. OB.50.

## B. Excessiveness

Appellee's arguments regarding the excessiveness factors (OB.53) confirm that the forfeiture of Ms. Mosby's Florida home (which she has depleted her life savings to maintain) "is grossly disproportional to the gravity of [the charged] offense," *United States v. Bajakajian,* 524 U.S. 321, 334 (1998), and hence unconstitutional.

1. Appellee never asserts that the charged conduct harmed anyone involved in the home purchase, including the lender. Instead, its two-sentence harm argument (Br.53) repeats the district court's claim of intangible harm to the public, without addressing Ms. Mosby's explanation (OB.54, 56) that that claim fails as a factual matter and conflicts with Supreme Court precedent. Appellee also cites no authority to support its flowery but empty (and vague) assertion that circumstances like these always "tear[] at the fabric of the law" (Br.53). All this makes clear that the harm factor strongly favors an excessiveness finding.

2. As to the nature and extent of the criminal activity, appellee argues (Br.53) that the conviction "falls in the heartland of the mortgage-fraud statute." But it provides zero support for that assertion. None exists; Ms. Mosby knows of no other case in which prosecutors have charged anyone for mortgage fraud based on a single alleged misrepresentation in a gift letter (let alone a letter for anything like $5,000) which resulted in no cognizable harm.

3. As to the relationship between the charged crime and others, appellee again repeats (Br.53) the district court's reasoning—and its only response to Ms. Mosby's explanation of the flaw in that reasoning (OB.57) is the footnoted (and hence forfeited) assertion that Ms. Mosby's cited cases showing that this factor supports an excessiveness finding constitutes "cherry-picking." Br.53 n.19. It is not "cherry-picking" to cite binding authority directly discussing the relevant issue.

4.     As to the amount of the forfeiture and its relationship to the authorized penalty, appellee seeks to distort the analysis by claiming (Br.52) that the forfeiture is "only" for "$428,400 (plus appreciation) … less than 'half of the statutorily authorized monetary penalty.'"  This claim rests on the notion (Br.54) that a statute vests forfeited property in the government as of the date of the underlying conduct. Appellee cites no excessiveness case that has analyzed forfeiture this way— undoubtedly because the Framers did not intend to give the very government officials whose overreaches the Eighth Amendment guards against the power to circumvent that protection in the way appellee suggests.  The pertinent facts remain:  Absent any forfeiture, Ms. Mosby will have the full value of the property (roughly $835,000 according to neutral public sources), whereas execution of the forfeiture order would deprive her of 90 percent of that value, or roughly $750,000. *Accord* JA357 n.*.  That reality, not appellee's legal fiction, provides the proper basis for the analysis—and makes clear that the amount of the forfeiture is large both in absolute terms and in comparison to the value of the misrepresentation the jury found: $5,000, or under one percent of the forfeiture amount.

Appellee also does not answer Ms. Mosby's argument (OB.58) that courts have eschewed the abstract analysis appellee espouses (simply comparing a forfeiture to the authorized statutory maximum), insisting on an *individualized* analysis.  Instead—evidently seeking to discuss anything but the facts—appellee

repeatedly argues (Br.52, 54) that the forfeiture is "presumptively reasonable" because it "is within her Guidelines range." The case appellee cites, however, involved no forfeiture, much less an excessiveness challenge. It thus had no occasion to conduct the analysis required here, or to say anything to support the notion that a $750,000 forfeiture for what the jury found was a misrepresentation about a $5,000 gift letter that caused no harm, is constitutional.

## CONCLUSION

The judgments of conviction and the forfeiture order should be set aside.

December 30, 2024

Respectfully submitted,

/s/ Daniel S. Volchok

JAMES WYDA
MAGGIE GRACE
OFFICE OF THE FEDERAL
    PUBLIC DEFENDER
100 S. Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962

PARESH S. PATEL
CULLEN O. MACBETH
OFFICE OF THE FEDERAL
    PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

DANIEL S. VOLCHOK
CARRIE M. MONTGOMERY
NITISHA BARONIA
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

ALAN SCHOENFELD
CHARLES C. BRIDGE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i)-(ii) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 6,500 words, excluding the portions exempted by Rule 32(f).

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

## CERTIFICATE OF SERVICE

On this 30th day of December, 2024, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK