**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-4304**

───────────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

MARILYN J. MOSBY,

                Defendant - Appellant.

───────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Lydia Kay Griggsby, District Judge.  (1:22-cr-00007-LKG-1)

───────────────

Argued:  January 31, 2025                     Decided:  July 11, 2025

───────────────

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

───────────────

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Thacker wrote the opinion in which Judge Agee joined.  Judge Niemeyer wrote a separate opinion, concurring in part and dissenting in part.

───────────────

**ARGUED:**  Daniel Stephen Volchok, WILMERHALE LLP, Washington, D.C., for Appellant.  David Christian Bornstein, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** James Wyda, Maggie Grace, Baltimore, Maryland, Paresh S. Patel, Cullen O. Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland; Carrie M. Montgomery, Nitisha Baronia, Washington, D.C., Alan Schoenfeld, Charles C. Bridge, WILMERHALE LLP, New York, New York, for Appellant.  Erek L. Barron, United States Attorney, OFFICE

OF THE UNITED STATES ATTORNEY, for Appellee.

THACKER, Circuit Judge:

Marilyn Mosby ("Appellant"), the former Baltimore City State's Attorney, was convicted of mortgage fraud and perjury in bifurcated jury trials. On appeal, Appellant asserts that her convictions for perjury should be vacated because the question on the predicate document upon which her perjury convictions were based was fundamentally ambiguous. She additionally asserts that the district court erroneously admitted evidence regarding Appellant's use of the funds she obtained as a result of her perjury. As to her mortgage fraud conviction, Appellant asserts that it should be vacated because the district court gave the jury an erroneous venue instruction, the weight of evidence did not support the jury's finding with respect to venue, and the district court improperly permitted cross examination about Appellant's perjury convictions. Last, Appellant asserts that the district court's forfeiture order, which was predicated on her mortgage fraud conviction, must be vacated because it was not authorized by statute and was unconstitutionally excessive.

We discern no error in the district court's adjudication of Appellant's perjury convictions. But, on the specific circumstances of this case, we agree with Appellant that the district court's jury charge with respect to venue in her mortgage fraud trial was erroneous. On that ground, we vacate Appellant's mortgage fraud conviction without reaching her remaining arguments. And because the district court's forfeiture order hinges on the mortgage fraud conviction, it is likewise vacated.

Therefore, we affirm in part and vacate in part.

3

I.

A.

1.

Background

Appellant served two terms as the Baltimore City State's Attorney from 2015–2023. During her second term, Appellant's marriage began to break down. After deciding that she would not seek a third term, Appellant sought to "posture [her]self" financially for the next phase of her life and "establish some sort of financial independence from [her husband]." J.A. 2060.[1] With that intent, in 2019 Appellant incorporated a set of travel related businesses under the name "Mahogany Elite." *Id.* at 634. Appellant's idea "was to set up a travel company to help underserved black families who don't usually have the opportunity to travel outside of urban cities." *Id.* at 2745.

Appellant also began looking for a home that she could purchase in her own name -- something she had never done before. After her offers on Baltimore properties fell through, she began looking at properties in Florida via a longtime friend, Monique Holtson-Greene, who worked as a realtor in the Florida market. Holston-Greene advised Appellant to work with Gilbert Bennet, a Florida mortgage broker, in order to obtain pre-approval for a mortgage.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Appellant informed Bennet that she was looking for a vacation rental property in Florida. After Bennet assisted Appellant in getting pre-approved for a mortgage, Appellant began looking for properties in Florida to purchase.

2.

Retirement Account Withdrawals

While she was looking for property to purchase in Florida, Appellant made two withdrawals from the money she had accrued in her retirement account during her years of working as a Baltimore City employee. At that time, Appellant's withdrawals were subject to the 2020 Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 ("CARES Act"). Pursuant to the CARES Act, individuals who experienced "adverse financial consequences" could make withdrawals from their retirement accounts without having to pay the typical tax penalties that are associated with pre-retirement withdrawals. *See* 26 U.S.C. § 72 statutory notes (Special Rules for Use of Retirement Funds).

In relevant part, the Coronavirus-Related Distribution Request form ("the Distribution Request Form") that Appellant completed in order to make a CARES Act pre-retirement withdrawal, asked if the applicant had "experienced adverse financial consequences stemming from [COVID-19]" as a result of: (1) being quarantined, furloughed, or laid off; (2) having reduced work hours; (3) being unable to work due to a lack of child care; or (4) the closing or reduction of hours of a business they own or operate. J.A. 2738. The Distribution Request Form did not require the applicant to identify which

of the four categories was applicable.  It only asked the applicant to certify that she had suffered adverse financial consequences stemming from any of those categories.

On May 26, 2020, Appellant submitted a request for a $40,000 coronavirus related withdrawal from her retirement account, in order to purchase a property in Florida.  On the Distribution Request Form, Appellant certified under penalty of perjury that she had experienced adverse financial consequences stemming from COVID-19, as a result of one of the four enumerated options.  In September 2020, Appellant used the $40,000 she obtained from the withdrawal as part of her down payment and closing costs for the purchase of a home in Kissimmee, Florida (the "Kissimmee Property").

On December 29, 2020, Appellant requested a second coronavirus related withdrawal of $50,000 from her retirement account.  She subsequently contracted to purchase a condominium in Longboat Key, Florida (the "Longboat Key Condo") for $476,000, based on a $428,400 mortgage with United Wholesale Mortgage.  Again, Appellant used the $50,000 as part of her down payment and closing costs to purchase the property.  The purchase agreement for the Longboat Key Condo gave Appellant until February 19, 2021, to close on the sale on pain of default.

3.

Longboat Key Condo Closing

On February 2, 2021, Bennet, as Appellant's mortgage broker, informed her via text message that due to an accounting error on his part, she was $5,000 short of the amount of money she needed to have in hand in order to satisfy United Wholesale Mortgage's underwriting requirements.  In her direct testimony at her mortgage fraud trial, Appellant

6

explained that United Wholesale Mortgage would not accept $5,000 of the amount she had tendered to satisfy the closing requirement because it had come from a joint account that Appellant shared with her minor daughter.

Appellant informed Bennet that she would be receiving the necessary $5,000 by February 12, from her standard biweekly paycheck. In response, Bennet told Appellant that she could make up the missing $5,000 via a "gift letter." J.A. 1850. As Bennet explained at trial, a gift letter is a certification by "any disinterested party" -- i.e., "any party not associated with the transaction" -- that they would provide a mortgagor with specified funds in order to satisfy a lender's closing requirements. *Id.* at 1849–51. The gift letter "documents who the monies come from," ensuring that they were obtained from a "disinterested party, meaning not the seller, not the buyer, not the broker, not the realtor, et cetera." *Id.* at 1849–50.

Bennet proposed that Appellant obtain a gift letter from her husband, because he was not a listed borrower on Appellant's mortgage application to purchase the Longboat Key Condo and, therefore, was a disinterested party. On February 9, Bennet emailed Appellant a partially completed draft gift letter. The draft gift letter was from Appellant's husband to Appellant, specifying that Appellant's husband "made a gift of $5,000 [to Appellant] to be transferred [at closing]." S.A. 146.[2] The draft gift letter included a

---

[2] Citations to the "S.A." refer to the Supplemental Joint Appendix filed by the parties in this appeal.

7

certification that the $5,000 was "not made available to [Appellant's husband]" by anyone "with an interest in the sale of the property . . . [or] associated with [the] transaction." *Id.*

Appellant and her husband signed the gift letter template (the "Gift Letter") on February 10, 2021, and February 9, 2021, respectively. At trial, Appellant testified that she wired her husband $5,000 on February 12 when she received her paycheck because she was "[n]ot necessarily confident that [her husband] would have the $5,000 at closing." J.A. 2082.

The Government adduced no direct evidence at trial that Appellant was in the District of Maryland when she transmitted the executed Gift Letter to United Wholesale Mortgage. Appellant's bank statement shows debit card transactions Appellant made in Maryland on February 2, 4, and 8, but not on the date when she received or signed the Gift Letter, or on any of the dates thereafter up to Appellant's closing on February 19, 2021.

The Government introduced evidence in its case in chief from a former underwriter for United Wholesale Mortgage, that the "purpose of the gift letter was to prevent the interest 'rate lock' for [Appellant]'s mortgage loan from expiring." J.A. 302–03. In a document prepared by United Wholesale Mortgage and printed on February 10, 2021, however, United Wholesale Mortgage specified that Appellant's "rate lock" did not expire until closing, on February 19, 2021. S.A. 94. That same document referenced the Gift Letter as a condition for closing: "Gift funds from [Appellant's husband] are being transferred prior to release of final closing package." *Id.* United Wholesale Mortgage also prepared an "Enclosed Documents List," also dated February 10, 2021, containing Appellant's mortgage application materials. *Id.* at 130. The February 10, 2021 mortgage

8

application packet referenced an unattributed $5,000 gift, but the packet itself does not contain the Gift Letter.

The former underwriter for United Wholesale Mortgage testified that Appellant would have needed an intermediary -- her mortgage broker -- to "upload" the Gift Letter to the "United Wholesale Mortgage system." J.A. 1319. However, the Government did not adduce any direct evidence as to when Appellant transmitted the Gift Letter to her broker to be uploaded, or where she was at the time.

Per the Government's evidence, Appellant travelled by airplane to Florida on February 16. The following day, Appellant's husband sent Appellant $5,000 consistent with his obligation pursuant to his attestation in the Gift Letter. On that same day, as the district court found in its review of the Government's evidence: "[Appellant]'s mortgage loan was approved . . . [by United Wholesale Mortgage]." J.A. at 302.

On February 19, 2021, Appellant closed on the Longboat Key Condo in Florida.

B.

1.

Pre-trial Proceedings

Appellant was indicted in January 2022 on four counts: (1) perjury, in violation of 18 U.S.C. § 1621, based on Appellant's May 26, 2020 withdrawal from her retirement account ("Count One"); (2) mortgage fraud, in violation of 18 U.S.C. § 1014, based on Appellant's mortgage application to purchase the Kissimmee Property ("Count Two"); (3) perjury, in violation of 18 U.S.C. § 1621, based on Appellant's December 29, 2020 withdrawal from her retirement account ("Count Three"); and (4) mortgage fraud, in

9

violation of 18 U.S.C. § 1014, based on Appellant's mortgage application to purchase the Longboat Key Condo ("Count Four").

Appellant's two mortgage fraud charges alleged seven predicate false statements. Specifically, Count Two charged that in Appellant's mortgage application for the Kissimmee Property she failed to disclose that she owed federal taxes, falsely stated that she was not delinquent or in default on any federal debt, and falsely stated that she would maintain exclusive control over the occupancy or use of the property. Count Four charged that in Appellant's mortgage application for the Longboat Key Condo she falsely stated that she had spent the last 70 days in Florida, failed to disclose that she owed federal taxes, falsely stated that she was not delinquent or in default on any federal debt, and falsely stated that her husband gifted her $5,000 to be applied to the purchase of the Longboat Key Condo.

On Appellant's motion, the district court severed the perjury charges from the mortgage fraud charges due to concern that "a joint trial would encumber the [Appellant]'s decision about whether to assert her Fifth Amendment privilege against self-incrimination with regards to certain counts in th[e] case." J.A. 183. As a result, the district court scheduled the perjury trial to precede the mortgage fraud trial.

Appellant moved to dismiss the perjury counts in the indictment arguing, inter alia, that the term "adverse financial consequences" on the retirement account Distribution Request Form was "fundamentally ambiguous." J.A. 74–80. Accordingly, Appellant argued that the Distribution Request Form was insufficient to support a jury charge of perjury as a matter of law because a form that poses a fundamentally ambiguous question

10

may not support a perjury conviction. The district court denied the motion, concluding, "the standards for determining what it means to suffer 'adverse financial consequences' stemming from the Coronavirus are set forth in the definition of a '[C]oronavirus-related [D]istribution' under Section 2202 [of the CARES Act]." *Id.* at 166.

Prior to the perjury trial, Appellant moved to "exclude evidence regarding how her withdrawn [retirement funds] were used." J.A. 138. Appellant argued that such evidence was irrelevant because neither the CARES Act nor anything else placed limits on how the withdrawn money could be used. Appellant argued in the alternative that such evidence would be unduly prejudicial "due to animosity or jealousy that [Appellant] used [] funds to purchase second homes in Florida during a pandemic," and that it could both confuse the jury and waste its time. *Id.* at 112–13. The district court denied the motion, concluding that the evidence was "relevant to determining whether [Appellant] experienced 'adverse financial consequences' due to [COVID-19]." *Id.* at 156. Regarding Appellant's objection with respect to prejudice and jury confusion, the court concluded that any potential undue prejudice, confusion, or wasted time "[would] not substantially outweigh the probative value of t[he] evidence." *Id.* at 156–57.

2.

Perjury Trial

Appellant's perjury trial began on October 31, 2023. Appellant's counsel argued that Appellant reasonably thought that the negative impact of COVID-19 on her travel business, Mahogany Elite, amounted to an adverse financial consequence as specified on the Distribution Request Form. The Government countered that Appellant's business

11

never had any income, and that Appellant never had any plans to open the business during the relevant time frame, based on Appellant's stipulation that Mahogany Elite was "brand new and [] not yet conducting business." J.A. 631. Consequently, the Government argued, Appellant could not have suffered any "adverse financial consequences," since Appellant had not yet started the company, earned any revenue, or incurred any costs. Appellant exercised her right not to testify. After seven days of trial, on November 9, 2023, the jury convicted Appellant on both perjury counts.

Following the perjury trial, Appellant moved in limine to preclude the Government from cross examining her about her perjury convictions if she testified in her mortgage fraud trial. The district court denied her motion but nonetheless excluded evidence about the underlying details in connection with Appellant's perjury convictions, permitting cross examination only into the fact that she had been convicted. The district court also permitted the Government to introduce evidence showing that the down payments for the Florida homes came from retirement funds withdrawn pursuant to the CARES Act. The court precluded the Government from implying that Appellant's withdrawals were the basis for her perjury convictions.

3.

Mortgage Fraud Trial

Appellant's mortgage fraud trial began on January 17, 2024. Unlike in the perjury trial, Appellant testified at the mortgage fraud trial. During her direct testimony, Appellant explained that an accounting mistake by her broker had left her $5,000 short of what she needed to close on the Longboat Key Condo on February 19, 2021. She further explained

that to make up the difference, her broker suggested she obtain a gift letter from her husband. She testified that her husband assured her that he could provide the $5,000 before the closing and signed the Gift Letter on February 9, 2021. Appellant testified that she wired her husband $5,000 when she got paid on February 12, because she was not "confident that he would have the $5,000 at closing." J.A. 2082.

At the end of her direct testimony, in response to a question from her counsel, Appellant disclosed that she had a perjury conviction. Appellant's counsel then asked her, "why [she was] testifying today?" J.A. 2089. Appellant answered, "[b]ecause I regret not testifying before, and I want this jury to hear my truth." *Id.* Based on that statement, the Government asserted that Appellant had opened the door to cross examination on the perjury convictions. The Government argued that Appellant's testimony implied that "there was inadequate evidence to convict her in the earlier trial because she didn't testify" and that "the prior jury didn't hear her truth and therefore [] the perjury conviction is invalid." *Id.* at 2094. In the Government's view, this amounted to an attack on the sufficiency of the evidence of Appellant's perjury convictions, thereby warranting "[cross examination] about the prior trial and the evidence in that trial." *Id.*

After hearing argument, the district court determined that its prior ruling granting Appellant's motion in limine to exclude the details of the facts underpinning the perjury convictions did not apply. Specifically, the court noted that its prior ruling "did not address the circumstance of [Appellant] raising the perjury conviction[s] [i]n [her] direct [testimony]." J.A. 2096. Rather, the court's ruling had contemplated permitting the Government to raise Appellant's perjury convictions in cross examination in a "limited

13

discussion[,]" regarding Appellant's "[c]haracter [as] to truthfulness." *Id.* In that sense, the court concluded that Appellant's direct testimony about her perjury convictions was "a different scenario," outside the scope of its prior ruling. *Id.* As a result, the court permitted the Government to cross examine Appellant about her perjury convictions. Consequently, the Government elicited testimony on cross examination that Appellant had been convicted of falsely stating on the Distribution Request Forms that she had suffered "adverse financial consequences," and that she had used the obtained funds to purchase two properties in Florida.

At the close of the Government's case, Appellant moved pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal arguing, inter alia, that the Government had failed to prove venue. Appellant argued that our decision in *Reass v. United States*, 99 F.2d 754 (4th Cir. 1938) dictated that "venue is only proper in § 1014 cases in the district where the false statement is communicated or received." J.A. 215. In Appellant's view, pursuant to *Reass*, the Government needed to present evidence that the Gift Letter was "submitted or received in Maryland" in order to establish venue in that district. *Id.* at 216. Appellant argued that the Government had not met this burden with respect to the Gift Letter, because the Government had only presented circumstantial evidence that Appellant was likely in Maryland when she signed the Gift Letter on February 10, 2021. Appellant argued that this evidence permitted only a "speculative" inference that the Government had proved venue. *Id.* at 218.

14

While Appellant's motion for a judgment of acquittal was pending, the parties conferenced with the district court regarding jury instructions. The court declined to give Appellant's proposed instruction that:

> [V]enue is proper only in a district in which an essential conduct element of the offense took place . . . . The offense of making a false statement under the offense charged does not begin until the false statement has been communicated to the recipient mortgage lender. However, acts which are merely preparatory to the offense cannot provide a basis for venue. Therefore, mere preparation of a false statement cannot provide a basis for venue. Under these terms, the government must prove that [Appellant] communicated each alleged false statement to the recipient mortgage lender from a location within the District of Maryland.

J.A. 241. Instead, over Appellant's written and verbal objection, the district court adopted the Government's instruction: "In addition to the elements of the offense, you must consider whether any act occurred in the furtherance of this crime in the District of Maryland." *Id.* at 2439.

Appellant argued that this instruction was improper because the phrase "in furtherance of" opened the door to the jury determining venue based on mere preparatory conduct as opposed to the essential conduct elements that are required to establish venue. Appellant argued that such an overbroad instruction was prohibited by our decision in *United States v. Sterling*, 860 F.3d 233, 241 (4th Cir. 2017) (holding that "[a]cts which are merely 'preparatory'" are not a basis for venue). The district court's instruction, Appellant argued, would permit the jury to "find venue merely based on preparatory acts in Maryland—even if they believe [Appellant] was not in Maryland when she communicated the alleged false statements to the lenders." J.A. 239.

After three weeks of trial, on February 7, 2024, Appellant was convicted on a single mortgage fraud predicate: the Gift Letter from her husband that she used to purchase the Longboat Key Condo.[3]   After the jury returned its verdict, the district court denied Appellant's motion for acquittal, concluding that the Government "sufficiently established during its case-in-chief that [Appellant] was in the District of Maryland when she submitted the [] Gift Letter to United Wholesale Mortgage."  J.A. 303.

4.

Sentencing

The district court sentenced Appellant to three years of supervised release, with the first year to be served in home confinement.   Additionally, the court granted the Government's motion to forfeit the Longboat Key Condo, holding that the Government had "established by a preponderance of the evidence that [Appellant] obtained [the Longboat Key Condo] as the result of her criminal conviction [for mortgage fraud]."  J.A. 330.   The court rejected Appellant's arguments that forfeiture: (1) was not statutorily authorized because the Government had not proven that Appellant would not have obtained the home but for the Gift Letter; and (2) constituted an unconstitutionally excessive fine in violation of the Eighth Amendment.   Therefore, the court ordered Appellant to forfeit 90%

---

[3] The jury acquitted Appellant on the Count Two charge relating to the Kissimmee property.  On Count Four, the jury only found Appellant guilty with respect to the Gift Letter predicate; the jury did not find Appellant guilty on the remaining three fraud predicates proffered by the Government relating to other alleged fraudulent statements Appellant made in connection with her mortgage application to purchase the Longboat Key Condo.

16

of her interest in the Longboat Key Condo, amounting to approximately $773,200 according to Appellant's calculation.[4]

Appellant timely noted her appeal.

## II.

## A.

Appellant raises several challenges on appeal.

With respect to her perjury convictions, Appellant asserts that the district court erred by denying her motion to dismiss the perjury counts in the indictment. Specifically, Appellant alleges that the predicate false statements set out in the indictment were fundamentally ambiguous and thus could not form the basis for her perjury convictions as a matter of law. Appellant also alleges that the district court erred by admitting evidence as to Appellant's use of the funds that she withdrew from her retirement accounts, which unduly prejudiced and confused the jury.

With respect to her mortgage fraud conviction, Appellant alleges that the district court erroneously instructed the jury on venue, and that the evidence that was presented to the jury was legally insufficient to establish venue in the District of Maryland. She also alleges that the district court improperly permitted the Government to cross examine Appellant about her perjury convictions.

---

[4] On October 11, 2024, a prior panel of this court granted Appellant's motion to stay the district court's forfeiture order pending appeal.

17

Last, Appellant argues the district court erred by issuing the forfeiture order because Appellant's property was not subject to forfeiture by statute and because the forfeiture order itself was unconstitutionally excessive in violation of the Eighth Amendment.

B.

Perjury Convictions

Appellant's arguments on appeal as to her perjury convictions are without merit.

1.

Motion to Dismiss

Turning first to the district court's denial of Appellant's motion to dismiss the perjury counts, we review the district court's factual findings on a motion to dismiss an indictment for clear error and its legal conclusions de novo. *United States v. Barringer*, 25 F.4th 239, 246 (4th Cir. 2022).

The question we are faced with here is whether the term "adverse financial consequences" on the Distribution Request Form is too ambiguous to support a perjury charge. "[An] answer to a fundamentally ambiguous question may not, as a matter of law, form the basis for a false statement." *United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012). Restated, the answer to a fundamentally ambiguous question cannot be perjurious.

Here, Appellant asserts that the phrase "adverse financial consequences" on the Distribution Request Form was "fundamentally ambiguous." Therefore, Appellant argues, the question on the Distribution Request Form asking whether the applicant had suffered "adverse financial consequences" was a "fundamentally ambiguous question," which could not serve as the basis for a perjury conviction as a matter of law. Accordingly, Appellant

18

argues the district court should have dismissed Counts One and Three because they charged Appellant with committing perjury by answering a "fundamentally ambiguous" question.

A phrase is "fundamentally ambiguous" when it "is not a phrase with a meaning about which [people] of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time." *Sarwari*, 669 F.3d at 407 (quoting *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986)).  Yet "[f]undamental ambiguity is the exception, not the rule." *Id.* (citing *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998)).  Indeed, a district court cannot "dismiss a charge of perjury when it is entirely reasonable to expect a defendant to have understood the terms used in the questions." *Id.* (citations omitted).

Appellant seeks to establish ambiguity on the ground that "financial" could have multiple meanings.  But just because words "have different meanings in different situations does not make them fundamentally ambiguous." *Sarwari*, 669 F.3d at 407 (quoting *Lighte*, 782 F.2d at 375).  Indeed, the district court explained how "adverse financial consequences" is "a phrase with a meaning about which [persons] of ordinary intellect could agree," *id.*, by its instruction that "[a]dverse financial consequences means an unfavorable or negative outcome related to money[,]" J.A. 901.  This simple and accurate definition of the phrase, "adverse financial consequences" is one we have no trouble believing people of ordinary intellect would understand.

Moreover, Appellant may not establish ambiguity by "isolating a question from its context." *Sarwari*, 669 F.3d at 408 (quoting *United Farmer*, 137 F.3d at 1269).  And, here, the allegedly ambiguous term, "adverse financial consequences," was followed by the

19

qualifier "stemming from [COVID-19] as a result of" four enumerated examples: (1) being quarantined, furloughed or laid off; (2) having reduced work hours; (3) being unable to work due to lack of child care; and (4) the closing or reduction of hours of a business the applicant owns or operates. J.A. 2738. Read in its full context, therefore, the term is adequately clear because the specific parameters of an "adverse financial consequence" are set out in the Distribution Request Form itself. Spelled out in full, an "adverse financial consequence" is an unfavorable or negative outcome related to money, stemming from COVID-19, and resulting from one of the four examples identified on the Distribution Request Form.

In sum, the term "adverse financial consequences" is not "fundamentally ambiguous." This means the Distribution Request Form did not pose a fundamentally ambiguous question and is, therefore, legally adequate to support a perjury conviction. The district court did not err in denying Appellant's motion to dismiss.

2.

Motion In Limine Ruling

We turn next to Appellant's assertion that the district court erred in ruling in limine that the Government could admit evidence as to how Appellant used the $90,000 she withdrew from her retirement accounts. We review "a district court's evidentiary rulings for abuse of discretion." *United States of Am. v. Freitekh*, 114 F.4th 292, 315 (4th Cir. 2024) (citation omitted). We apply a "highly deferential standard of review to . . . a trial court's decision to admit evidence over a Rule 403 objection, and that decision will not be

20

overturned except under the most extraordinary circumstances, where that discretion has been plainly abused." *Id.* (quotation marks omitted).

Appellant argues that evidence regarding her use of the $90,000 was irrelevant and, alternatively, unduly prejudicial and confusing to the jury. Her contentions are without merit.

As the district court concluded, evidence as to how Appellant utilized the withdrawn funds was relevant because it was probative on the factual question of whether she suffered an adverse financial consequence as a result of COVID-19. Moreover, the probative value of the admitted evidence was not "substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403). Indeed, Rule 403 "requires exclusion of evidence only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Freitekh*, 114 F.4th at 316 (citations omitted).

Here, Appellant argues the evidence that she used the $90,000 to purchase vacation homes in Florida prompted the jurors to convict her "because they viewed her as a wealthy woman and a public figure motivated by greed." Appellant Br. at 46. In support of her argument, Appellant chiefly relies on the Government's statements during closing argument that Appellant committed perjury "for 'her own private gain . . . to access $90,000 to purchase a million dollars['] worth of Florida vacation homes.'" *Id.* at 45 (quoting J.A. 810).

But Rule 403 requires more than a mere showing of "general prejudice." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (cleaned up). While a juror might have inferred from the Government's statements that Appellant was wealthy and held that against her, this is not the kind of prejudice that "*substantially* outweighs the probative value of the evidence." *Byers*, 649 F.3d at 210 (emphasis in original). At best, Appellant's theory alludes to a generalized risk of prejudice, based on the presumption that reasonable jurors are generally hostile to wealthy people. This purported risk did not warrant exclusion pursuant to Rule 403.

Next, Appellant argues that the district court's failure to exclude evidence about how Appellant used the funds she withdrew from her retirement accounts risked confusing the jury. Namely, she argues that the evidence could "misle[ad] jurors into believing that their task was to determine whether the adverse financial consequences [Appellant] experienced were severe enough to justify the amounts withdrawn, and/or whether the money was used for a permissible purpose." Appellant Br. at 47.

In support of her argument, Appellant relies on *Zayyad*, where we affirmed a district court's exclusion of cross examination of a Government witness regarding "irrelevant" testimony, on the ground that it could "distract" the jury. *United States v. Zayyad*, 741 F.3d 452, 460 (4th Cir. 2014) ("[A] defendant cannot distract the jury by introducing evidence concerning a potential defense that he never raised . . . . Relevance, after all, must 'be determined in relation to the charges and claims being tried.'") (citation omitted). This authority is inapposite to Appellant's argument. The portion of *Zayyad* upon which Appellant relies discussed the test for determining relevance, not the test for excluding

22

relevant evidence that risks unduly confusing the jury.[5]  *See United States v. Nsahlai*, 121 F.4th 1052, 1061 (4th Cir. 2024) ("[Pursuant to Federal Rule of Evidence 403], evidence that is relevant may nonetheless be excluded for any of several reasons including that 'its probative value is substantially outweighed by a danger of' 'unfair prejudice, confusing the issues, [or] misleading the jury.'" (quoting Fed. R. Evid. 403))).

On the merits, the district court's ruling was not an abuse of discretion.  The probative value of the evidence as to how Appellant used the funds she withdrew from her retirement accounts was not substantially outweighed by the risk of confusing the jury.  Appellant speculates that the jury could have confused determining whether the Government carried its burden to prove that Appellant had committed perjury with determining whether the adverse financial consequences Appellant experienced were severe enough to justify the amounts withdrawn.  But as Appellant concedes, the district court properly instructed the jury on the elements of perjury, and "[w]e presume juries follow the court's instructions."  *United States v. Ortiz-Orellana*, 90 F.4th 689, 699 (4th Cir. 2024).  Thus, given that the court properly instructed the jury on the underlying offense, and the alleged confusion derives from relevant evidence, Appellant's speculative concern that the admitted evidence "likely mislead [the] jurors," Appellant Br. at 47, rings hollow.

---

[5] *Zayyad* did briefly consider a Rule 403 jury confusion issue, but only to sustain the district court's ruling, as we do here.  *Zayyad*, 741 F.3d at 461–62 ("It is not an easy thing to overturn a Rule 403 ruling on appeal.").

In sum, the district court did not err in permitting the Government to introduce evidence as to how Appellant utilized the funds she withdrew from her retirement accounts. That evidence was probative as to whether Appellant suffered "adverse financial consequences." And the probative value of that evidence was not substantially outweighed by a risk of undue prejudice or jury confusion.

C.

Mortgage Fraud Conviction

We turn next to Appellant's argument relative to her mortgage fraud conviction. Appellant asserts that the district court erroneously instructed the jury on venue in her mortgage fraud trial.

We review "whether a jury instruction incorrectly stated the law de novo." *United States v. McCabe*, 103 F.4th 259, 278 (4th Cir. 2024). If a jury instruction did incorrectly state the law, "[then] we decide under either harmless error or plain error whether the conviction must be set aside." *United States v. Smithers*, 92 F.4th 237, 246 (4th Cir. 2024). A preserved error is "harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Venue is no "mere technicality." *United States v. Moran-Garcia*, 966 F.3d 966, 969 (9th Cir. 2020); *accord United States v. Miller*, 111 F.3d 747, 749 (10th Cir. 1997). Nor is it just a "matter[] of formal legal procedure." *United States v. Johnson*, 323 U.S. 273, 276 (1944). Rather, "[q]uestions of venue in criminal cases . . . raise deep issues of public policy," *id.*, which is why "[p]roper venue in criminal proceedings was a matter of concern

24

to the Nation's founders." *United States v. Cabrales*, 524 U.S. 1, 6 (1998). Indeed, the Constitution "twice safeguards the defendant's venue right." *Id.* Article III instructs that the "Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. And the Sixth Amendment requires trial "by an impartial jury of the . . . district wherein the crime shall have been committed." *Id.* amend. VI. The Federal Rules "echo the[se] constitutional commands," providing that "'prosecution shall be had in a district in which the offense was committed.'" *Cabrales*, 524 U.S. at 6 (quoting Fed. R. Crim. P. 18).

The district court instructed the jury in Appellant's mortgage fraud trial as follows:

> In addition to the elements of the offense, you must consider whether any act occurred in the furtherance of this crime in the District of Maryland . . . . In this regard, the Government need not prove that the crime itself was committed in this district or that the Defendant herself was present here. It is sufficient to satisfy this element if any act in furtherance of the crime occurred within the District of Maryland. If you find that the Government has failed to prove that any act in the furtherance of the crime occurred within the District of Maryland, or if you have any reasonable doubt on this issue, you must then find [Appellant] not guilty of the charges.

J.A. 2439. This instruction, taken from the model federal jury instructions on venue, Leonard B. Sand et al., 1 Modern Federal Jury Instructions – Criminal ¶ 3–11 (2023), instructs that venue existed in the District of Maryland "if any act in furtherance of the crime occurred [there]." J.A. 2439. The question we must answer is whether this rule suffices to establish venue for violations of the federal mortgage fraud criminal statute, 18 U.S.C. § 1014.

25

In *United States v. Sterling*, we recognized that where, as here, "a criminal statute does not contain a venue provision, we must examine the criminal offense and the location of the acts constituting it." 860 F.3d 233, 240 (4th Cir. 2017). And venue is proper "only in a district in which an essential conduct element of the offense took place." *Id.* (quoting *United States v. Smith*, 452 F.3d 323, 334–35 (4th Cir. 2006)). Therefore, determining where proper venue lies is a two step process. *Id.* at 241; *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 279–80 (1999) (outlining two step venue inquiry in criminal prosecutions). First, we must "identify the conduct constituting the offense" -- i.e., the offense's "essential conduct" elements. *Sterling*, 860 F.3d at 241 (citation omitted). Second, we must "determine where the criminal conduct was committed." *Id.* (citation omitted).

Of particular relevance to this appeal, in *Sterling* we held that "[a]cts which are merely 'preparatory' to the underlying offense and its essential conduct . . . cannot provide a basis for venue." *Id.* (quoting *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005) (finding that for purposes of mail fraud, venue lies where an individual actually misuses the mails, and not where an individual only devises a scheme to defraud)). That is, preparatory conduct does not satisfy the first step of the venue inquiry because it is not the type of essential conduct that is required for the establishment of venue.

The controlling authority to discern the line between essential conduct and mere preparatory conduct for § 1014 is our decision in *Reass v. United States*, 99 F.2d 752 (4th Cir. 1938). In *Reass*, we reversed a defendant's conviction for violating 12 U.S.C. § 1441(a) (1932 ed.), the predecessor to § 1014. *See United States v. Wells*, 519 U.S. 482,

26

492 (1997) (discussing the history of § 1014).   At the time, § 1441(a), criminalized knowingly making a false statement "for the purpose of influencing in any way the action of a Federal Home Loan Bank upon any application for loan." *Reass*, 99 F.2d at 752.  In *Reass*, the defendant was convicted by a jury in the Northern District of West Virginia for preparing, filling out, and signing a fraudulent loan application, and then submitting it in person to a federal bank in Pittsburgh, Pennsylvania.  *Id.* at 753.

We recognized that the underlying statute "was passed to protect the Federal Home Loan Banks from fraudulent attempts to secure favorable action on applications for loans and like matters." *Reass*, 99 F.2d at 755.  Thus, we held that the "gist of the offense [was] the attempt to influence the corporation" which made the "communication of the false statements . . . the very essence of the crime." *Id.*  This meant that, with respect to venue, "[t]he mere assembling of the material and its arrangement in a written composition containing the misrepresentations of fact c[ould] have no effect." *Id.*  Rather, it was only when the fraudulent material was "communicated . . . that the crime takes place." *Id.*  Thus, "the acts performed by the defendant in Wheeling, [West Virginia,] although preparatory to the commission of the crime, were no part of the crime itself." *Id.*

Our disposition of § 1441 in 1938 binds our disposition of § 1014 today.[6]  Congress enacted § 1014 in 1948 "as part of its recodification of the federal criminal code." *Wells*,

---

[6] The dissent asserts that our decision in *Blecker* modified our rule from *Reass* that signing or otherwise preparing a fraudulent document amounts to mere preparatory conduct with respect to venue for the federal statute on criminal mortgage fraud.  Not so.  As the dissent concedes, *Blecker* dealt with a different statute than the one at issue here. *United States v. Blecker*, 657 F.2d 629, 632 (4th Cir. 1981) (looking to "the language of the false (Continued)

519 U.S. at 492 (citing 62 Stat. 752). In doing so, it brought together 13 statutory provisions, including § 1441, into a single criminal statute. *Id.* Yet, critical for our purposes here, the relevant statutory language remained substantially the same. *Compare* 12 U.S.C. § 1441(a) (1932 ed.) ("Whoever makes any statement, knowing it to be false . . . for the purpose of influencing in any way the action of a Federal Home Loan Bank.") *with* § 1014 ("Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any Federal home loan bank."). That is, the criminal defendant must knowingly "make" a false statement, in order to run afoul of the statue, both in 1938 and today.

*Reass* remains good law in this Circuit.[7] *See United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this court becomes the law of the circuit and

---

claims statute, [18 U.S.C. § 287]" to derive the rule that venue is proper with regard to that statute "in either the district in which the claims were made or prepared"). Concerning that statute, the *Blecker* court considered the distinct question of whether venue was also proper in the district "in which the false claim was submitted to an intermediary[,]" who then passed on the fraudulent documents to a government agency. *Id.* at 633. The disposition of that issue in *Blecker* is irrelevant to this appeal because it has no bearing on whether venue for the mortgage fraud statue may be established by a defendant signing or otherwise preparing a fraudulent document, as was considered in *Reass*. In fact, *Blecker* cited *Reass* merely in passing, to note that the question at issue in *Blecker* was not resolved by the *Reass* decision. *Id.* (recognizing that *Reass* had not "dealt with th[is] clearly distinct context"). This perfunctory treatment of *Reass* neither modified nor overruled the venue rule from that decision -- defining preparatory conduct in the venue inquiry for the federal statute on criminal mortgage fraud -- as the dissent suggests.

[7] In attempt to avoid this reality, the Government argues in a footnote that *Reass* was abrogated by the Supreme Court in *Williams v. United States*, 458 U.S. 279 (1982). While we need not consider such an argument, *see United States v. Arbaugh*, 951 F.3d 167, 174 n.2 (4th Cir. 2020) (recognizing "[w]e do not ordinarily entertain arguments made solely in a footnote because they lack the development required by Federal Rule of

(Continued)

is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court."); *see also McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (recognizing that "the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions"). Therefore, to establish venue pursuant to *Sterling*, the jury here had to find that Appellant transmitted the Gift Letter to her Florida mortgage lender from the District of Maryland. Preparatory acts, such as preparing, filling out, or signing the Gift Letter do not suffice.

Applying this framework, the district court's venue instruction to the jury was erroneously overbroad. By instructing the jury that "[i]t [wa]s sufficient to [establish venue] if any act in furtherance of the crime occurred within the District of Maryland," J.A. 2439, the district court permitted the jury to establish venue based on mere preparatory acts.

Indeed, the district court's venue instruction is substantially identical to the erroneous instruction that we found to be "ambiguous" in *Sterling*, wherein the district court instructed the jury that it needed to find "that at least one act in furtherance of that

---

Appellate Procedure 28"), the Government is incorrect on the merits. The Supreme Court did hold in *Williams* that the elements of a § 1014 charge are: (1) the defendant made a "false statement or report," or "willfully overvalue[d] any land, property or security"; and (2) he did so "for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, . . . commitment, or loan." 458 U.S. at 284. But, as Appellant aptly points out, the fraudulent statement must still be "made" to someone. Therefore, the venue related holding in *Reass* remains undisturbed by *Williams*. Indeed, *Williams* itself says nothing about venue.

offense occurred in the . . . District." *Sterling*, 860 F.3d at 244–45 (emphasis omitted). As in *Sterling*, the district court's instruction here impermissibly permitted the jury to find venue based on preparatory acts because the instruction did not distinguish between essential acts and preparatory acts. The instruction merely instructed, "any act in furtherance of the crime" was sufficient to establish venue. J.A. 2439.

Unlike in *Sterling*, however, the district court's additional instructions in this case do not cure the deficiency in its venue instruction. In *Sterling*, we held that the ambiguity in the venue instruction was rendered harmless by "an earlier statement to the jury that the defendant must be tried 'where the offense was committed.'" *Sterling*, 860 F.3d at 245 (explaining that this instruction "helped dispel any ambiguity, by clarifying that 'willful retention' (and not just mere preparation for such retention) needed to occur in the [trial district] for the jury to find proper venue"). No such instruction appears in this case. Instead, the venue instruction here specifies only that the jury was to establish venue "[i]n addition to the elements of the offense." J.A. 2439. And the jury instruction here even went so far as to say that the Government did not need to "prove that the crime itself was committed in this district." *Id.* Read cumulatively, these instructions expressly permitted the improper inference that venue could be established by the type of preparatory acts that are prohibited by *Reass*. This was error.

Having determined that the district court's instruction to the jury with respect to venue in the mortgage fraud trial was erroneous, we must assess whether the error was

30

harmless.[8]  To make that assessment, we ask whether the "record contains evidence that could rationally lead to a contrary finding with respect to that omitted element." *Smithers*, 92 F.4th at 251 (quoting *United States v. Brown*, 202 F.3d 691, 701 (4th Cir. 2000)).  If "there is evidence upon which a jury could have reached a contrary finding, the error is not harmless . . . because . . . we cannot determine beyond a reasonable doubt that the 'jury verdict would have been the same absent the error.'"  *Id.* (quoting *Brown*, 202 F.3d at 701) (citation omitted).  In this case the question is: could the jury have found that venue was not proper in Maryland because the Government had not satisfactorily demonstrated that the essential conduct of the offense -- as defined by *Reass* -- occurred in Maryland.

On this record, we conclude that the jury could indeed have determined that the Government did not meet its burden to establish venue in the District of Maryland, meaning that the instructional error was not harmless.  The Government's own closing argument highlights the issue.  In its closing argument, the Government focused exclusively on impermissible preparatory acts with respect to venue: "[Appellant] signed the gift letter in Baltimore, and she transferred funds to and from her husband's accounts . . . in Maryland banks."  J.A. 2327.  This underscores that, from the perspective of both the Government

---

[8] The Government argues that we should review for plain error.  The Government asserts that Appellant failed to preserve her challenge to this instruction because she did not object after the district court delivered the charge and before the jury retired.  Federal Rule of Criminal Procedure 30(d) obligates a defendant to raise her objection to a jury charge "before the jury retires to deliberate."  *McCabe*, 103 F.4th at 278 (quoting Fed. R. Crim. P. 30(d)).  As the Government concedes, however, Appellant objected to the instruction at the charge conference, and she filed a written objection before the charge was delivered.  This suffices to preserve the error.

31

and the jury, the venue determination that was being made rested on (impermissible) preparatory acts. J.A. 2326 (Government stating at closing: "The judge's instruction will say the Government doesn't need to prove the crime itself was committed in this district . . . it is sufficient to satisfy this element if any act in furtherance occurred in the district").

In fact, it is uncontested that there is no direct evidence in the record specifying that Appellant transmitted the Gift Letter to her mortgage lender from the District of Maryland. The district court itself stated, "the Government's evidence to establish venue in this District is certainly circumstantial." J.A. 303. And that circumstantial evidence could go either way. For example, the Government adduced no direct evidence as to where Appellant was after she received the draft gift letter on February 9. Nor did the Government adduce any direct evidence as to where Appellant was when she transmitted the Gift Letter to her broker in Florida, or even when that transmission occurred. The February 10, 2021 mortgage application packet did reference the Gift Letter, but it was conspicuously absent from the application packet. Further, the evidence presented at trial indicated that Appellant signed the Gift Letter on February 10, but then traveled to Florida on February 16 for her closing. And United Wholesale Mortgage did not approve Appellant's loan until February 17. On these facts, a rational factfinder could infer that Appellant sent the Gift Letter from her home in Baltimore. But it could also reasonably conclude that there was insufficient evidence to determine that fact, one way or the other. Perhaps Appellant took the Gift Letter with her when she travelled to Florida on February

16 and transmitted it to her broker from that district. There is no evidence solidifying what actually happened, where, or when.

This error could have been remedied by direction from the district court that the jury could establish venue by finding that an element of the crime was committed in Maryland. But that is not what the jury was told. Instead, both the district court and the Government told the jury, "the Government need not prove that the crime itself was committed in this district [to establish venue]." J.A. 2439 (district court instruction); *id.* at 2326 (Government stating at closing: "The judge's instruction will say the Government doesn't need to prove the crime itself was committed in this district"). The court instructed that the jury had to find venue "[i]n addition to the elements of the offense[,]" and that it could do so by finding that "any act in furtherance of the crime occurred in the District of Maryland." *Id.* at 2439. This excision of the elements of the offense from any act in furtherance of the crime leaves us in the dark about what venue determination was reached by the jury. We are thus left to conclude that the error was sufficiently prejudicial to warrant reversal.

For these reasons, we vacate Appellant's conviction for mortgage fraud and remand for further proceedings.[9] In rendering this disposition, we emphasize that our holding is cabined to the unique circumstances of this case.

---

[9] Because we vacate the mortgage fraud conviction, we decline to review Appellant's remaining arguments concerning her mortgage fraud conviction.

D.

<u>Forfeiture</u>

As a result of our decision to vacate the mortgage fraud conviction, the forfeiture order related to Appellant's Longboat Key Condo, which was obtained as the fruit of the alleged mortgage fraud, is also vacated. *See, e.g.*, *United States v. Aramony*, 88 F.3d 1369, 1387 n.11 (4th Cir. 1996).

III.

For the foregoing reasons, the judgments of the district court are

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*

34

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

The majority opinion sustains Marilyn Mosby's venue-related challenges to her conviction of mortgage fraud under 18 U.S.C. § 1014. Mosby contends (1) that the government failed to introduce evidence sufficient to show that the crime was committed in Maryland, and (2) that the district court's venue instruction was erroneous. I would reject both arguments and affirm the district court's judgment.

I

Mosby, as the elected State's Attorney for Baltimore City, Maryland, lived and worked in Baltimore. Evidence introduced at trial allowed the jury to find that, while in Maryland, she prepared, signed, and transmitted a false gift letter to an out-of-state mortgage lending business to satisfy financial requirements for closing her purchase of real property in Florida. She was indicted for mortgage fraud in the District of Maryland, where she made and from where she transmitted the false gift letter, and a jury impaneled in the District of Maryland convicted her for violating 18 U.S.C. § 1014.

Section 1014 provides, in relevant part:

> Whoever knowingly *makes* any false statement . . . for the purpose of influencing in any way the action of . . . a mortgage lending business . . . upon any application, . . . commitment, [or] loan . . . shall be [punished].

18 U.S.C. § 1014 (emphasis added). The elements that the government must prove for a conviction under the statute are (1) that the defendant knowingly made a false statement; (2) that the defendant made the statement for the purpose of influencing a financial institution such as, in this case, a mortgage lending business; (3) that the defendant

35

submitted the false statement to the mortgage lending business, and (4) that the false statement was made in relation to an application, commitment, or loan, among other transactions. *See, e.g.*, *United States v. Smith*, 838 F.2d 436, 439–40 (10th Cir. 1988); 3 Leonard B. Sand et al., *Modern Federal Jury Instructions – Criminal* ¶ 15.41 (2025).

## II

At trial, Mosby challenged the Maryland venue for prosecution of the § 1014 crime, contending that the government introduced insufficient evidence for the jury to conclude that she committed the crime in Maryland.  The jury, however, found that venue in Maryland was appropriate.  Mosby now challenges this finding on appeal, relying mainly on our decision in *Reass v. United States*, a 1938 opinion in which we concluded that "*communication* of the false statements to the corporation constitutes *the very essence* of the crime,*" 99 F.2d 752, 755 (4th Cir. 1938) (emphasis added), and arguing that she "communicated" her gift letter to the lender in Florida.

The rule is well established, under both Supreme Court and Fourth Circuit precedents, that venue lies in any State where *any conduct element* of the crime was committed, such that, in a prosecution under § 1014, venue is plainly proper in any State in which the defendant *prepares* or *transmits* the false statement.  *See, e.g.*, *United States v. Blecker*, 657 F.2d 629, 632–33 (4th Cir. 1981).  In this case, there was ample evidence for the jury to conclude that Mosby both prepared and transmitted the false gift letter in Maryland and that venue in that forum was therefore proper.

36

To begin, Article III, § 2, of the U.S. Constitution provides in relevant part, "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ."  This Venue Clause is reinforced by the Vicinage Clause in the Sixth Amendment, which guarantees "an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI; *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed").  When a crime is committed in more than one State, Congress has provided, "[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).

The controlling analysis for locating where a crime has been committed — the Constitution's venue determinant — begins with the identification of "the act or acts constituting [the crime]."  *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)).  Once the "essential conduct elements" of the crime are identified, a court must then discern where they were committed. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279–80 (1999) (articulating the two-step process).  And when a crime's conduct elements are committed in different localities, "venue . . . [is] appropriate in any of them."  *Id.* at 282; *see also* 18 U.S.C. § 3237(a).  In short, a court must conduct a two-step analysis by *first* identifying the conduct elements of the crime and *second* determining the location where each was committed.

We have repeatedly articulated and followed this process. In *Blecker*, when determining venue for the crime of "mak[ing] or present[ing]" a false claim to a federal agency, in violation of 18 U.S.C. § 287, we applied the two-step analysis and held that venue was "unquestionably appropriate in the District of Maryland in which the false claims *were prepared* or in the District of Columbia in which they *ultimately came to rest* with the [agency]." 657 F.2d at 632 (emphasis added). In *United States v. Barsanti*, when determining venue for the crime of making a materially false statement in a "matter" within federal jurisdiction, in violation of 18 U.S.C. § 1001(a), we applied this two-step analysis and observed that venue was appropriate in Washington, D.C., or Virginia when the false statements at issue were signed in Washington, D.C., sent to a mortgage bank in Virginia, and then transmitted to an agency in Washington, D.C. 943 F.2d 428, 434–35 (4th Cir. 1991). In *United States v. Bowens*, when determining venue for the crime of illegally harboring a fugitive, in violation of 18 U.S.C. § 1071, we noted that the task involved identifying the conduct elements of the crime and then the location where each was committed and found venue proper in each such location. 224 F.3d 302, 308–09 (4th Cir. 2000). In *United States v. Wilson*, when determining venue for the crime of escape under 18 U.S.C. § 751(a), we conducted the same analysis, determining the conduct elements of the crime and then the location of each, and indicated that venue lay in Nevada, where the defendant was erroneously released from custody, *and* in North Carolina, where he had been legally incarcerated. 262 F.3d 305, 320–21 (4th Cir. 2001). In *United States v. Smith*, when determining venue for the offense of murder while engaged in a drug-trafficking crime, in violation of 21 U.S.C. § 848(e), we identified various acts committed "*in*

38

*furtherance of* the drug conspiracy" in Virginia, making venue proper there even though the killing took place in Washington, D.C.  452 F.3d 323, 334–35 (4th Cir. 2006) (emphasis added).  While we concluded that venue may have been appropriate in either location, we observed that "our venue rules make clear that where venue lies, the choice among acceptable fora is one for the prosecution."  *Id.* at 336.  In *United States v. Sterling*, when determining venue for national security crimes, such as wrongfully disclosing classified information, we applied the two-step process established in *Rodriguez-Moreno*, noting that we must (1) "identify the conduct constituting the offense" and (2) "determine where the criminal conduct was committed."  860 F.3d 233, 241 (4th Cir. 2017) (cleaned up).  We explained that "if essential criminal conduct takes place in more than one district, the government may prosecute those offenses in any district in which such offense was begun, continued, or completed."  *Id.* (cleaned up).  And in *United States v. Ayon-Brito*, we applied *Rodriguez-Moreno*'s two-step analysis, again recognizing that venue lay in any State where a conduct element was committed.  981 F.3d 265, 269 (4th Cir. 2020).  In sum, we have repeatedly and consistently followed *Rodriguez-Moreno*'s two-step analysis to hold that *criminal venue lies in any State where an essential conduct element of the offense was committed*.

When the sufficiency of the evidence is challenged, we will affirm the jury's finding of venue whenever, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found venue *by a preponderance of the evidence*."  *Sterling*, 860 F.3d at 241 (emphasis added).

In this case, the evidence supported a finding that Mosby made the false statements in and transmitted them from the District of Maryland, where she lived and worked, by obtaining a gift letter in Maryland, signing it in Maryland, and "uploading" it from Maryland to Florida, where it was downloaded for use at closing in Florida. Moreover, Mosby received the falsely gifted money from her husband, who drew it from the Municipal Employees Credit Union in Maryland and transmitted it to the escrow agent for the transaction. Thus, the false statement was "made" in Maryland, a conduct element of the § 1014 crime, and transmitted from Maryland to Florida, also a conduct element of the crime.

In denying Mosby's challenge to the sufficiency of the evidence that conduct elements were committed in Maryland, the district court pointed to specific evidence that the government had introduced and concluded that the evidence was sufficient to show that "the defendant submitted the False Gift Letter to United Wholesale Mortgage on February 10, 2021, while she was in the District of Maryland." The court identified evidence showing that United Wholesale Mortgage accounted for the gift letter in its documentation on February 10, 2021, in preparation for the subsequent closing in Florida. The court also observed that evidence showed that Mosby had signed the gift letter on the same day. Additionally, the court noted that Mosby's broker had told Mosby that he would get her mortgage "Clear to Close" *on February 10th*, which would have required Mosby to have "no more underwriting conditions on the loan itself" and have, at that point in time, sufficient funds with which to close. In short, the district court recognized the obvious: Mosby had signed and uploaded the gift letter on February 10th.

As for evidence demonstrating that Mosby was in Maryland on February 10, the court noted that the government had introduced evidence of Mosby's Bank of America bank statements showing debit card transactions executed in Baltimore, Maryland, and Cockeysville, Maryland, dated February 2, 4, and 8, 2021. The government had also introduced records showing that Mosby's husband completed several bank transactions at Maryland financial institutions on February 9, 10, and 11, 2021. Finally, the court noted, the government had introduced evidence that on February 16, 2021, Mosby incurred a charge with Spirit Airlines, presumably for her trip from Maryland to Florida, where, on that same day, she used her debit card, showing that "the Defendant traveled from Maryland to Florida on February 16, 2021." Evidence showed that the mortgage loan was in fact approved on February 17 and that it closed in Florida two days later, with Mosby present.

In sum, this evidence showed that the false gift letter was prepared and executed in Maryland by Mosby and her husband on or before February 10, 2021, when it was transmitted to her broker in Florida to enable approval of the loan before closing; that Mosby was in Maryland during that period up until February 16, 2021, when she traveled to Florida; and that she attended the closing in Florida on February 19, 2021, which was enabled by the false gift letter. In these circumstances, venue was clearly proper in either Maryland or Florida, where the conduct elements of a § 1014 violation were carried out.

To support her venue challenge, Mosby relies on *United States v. Reass*, which we decided in 1938 — *i.e.*, before all of the governing Supreme Court decisions were handed down, prescribing the appropriate analysis, and before we thereafter applied that prescribed

analysis in numerous cases.  In *Reass*, the defendant prepared an application for a loan in Wheeling, West Virginia, and carried it personally to Pittsburgh, Pennsylvania.  99 F.2d at 753.  We held that a loan fraud violation under a predecessor to § 1014 "took place entirely in Pittsburg[h] where the writing previously prepared was *presented* to the bank."  *Id.* at 755 (emphasis added).  We did not perform the two-step analysis later required by *Rodriguez-Moreno* to identify the conduct elements of the offense and determine where those conduct elements had been committed because *Rodriguez-Moreno* had not yet been decided.  Nonetheless, we did limit our holding, stating, "We have no occasion in this case to consider whether the offense would have been cognizable in West Virginia, if the defendant had *entrusted the application to the mails* in Wheeling for delivery to the bank in Pittsburg[h] . . . ."  *Id.* (emphasis added).

And what was left *undecided* in *Reass* is precisely the circumstance we have before us in the case.  Mosby did not prepare the false gift letter in Maryland and then carry it to Florida to present it.  Rather, she both prepared it in Maryland and uploaded it in Maryland to the Internet for the purpose of influencing the mortgage lending business outside of Maryland.

Were this issue not expressly left open by *Reass*, we made clear that this was so in our subsequent decision in *Blecker*, where we held that both the *preparation* of the false claim and its *mailing* were conduct elements sufficient to justify venue under 18 U.S.C. § 287, a statute materially similar to § 1014.  Indeed, we concluded,

> That statute provides that any person who "makes or presents" a false claim to any agency of the United States is guilty of a crime.  Thus, venue lies to prosecute a violator of this statute in either the district in which the claims

> *were made or prepared*, or the one in which they *were presented* to the government.  Venue in the present case was therefore unquestionably appropriate in the District of Maryland in which the false claims were prepared or in the District of Columbia in which they ultimately came to rest with the [agency].

*Blecker*, 657 F.2d at 632 (emphasis added) (citations omitted).  Moreover, we explicitly addressed *Reass* and noted that it applied only to cases where the false statement *was actually delivered in person*.  As we explained:

> [I]n Reass we expressly refused to pass on the question "whether the offense would have been cognizable in West Virginia, *if the defendant had entrusted the application to the mails in Wheeling* for delivery to the bank in Pittsburgh."

*Id.* at 633 (emphasis added) (quoting 99 F.2d at 755).  Because *Blecker* construed *Reass*, rather than overruling it, we are bound by *Blecker* and our numerous similar decisions handed down thereafter, which have uniformly applied the two-step process.  And to the extent *Reass* is in tension with *Blecker*, it is also in tension with the decisions of the Supreme Court, which unmistakably require that venue be determined by (1) identifying the conduct elements and then (2) locating where each of those conduct elements was committed.

Consistent with this conclusion, at least two of our sister circuits have looked to *Blecker* as providing the default venue rule with respect to false-statement crimes — even under 18 U.S.C. § 1014.  *See United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996) (relying on *Blecker* for the "general venue rule for false claim crimes"); *United States v. Wuagneux*, 683 F.2d 1343, 1356 (11th Cir. 1982) (citing *Blecker* as providing "the general rule of venue under the various false statement and false claims statutes" when determining

43

venue for § 1014). They have, by contrast, declined to draw guidance from *Reass*. *United States v. Brown*, 898 F.3d 636, 639–41 (5th Cir. 2018) (observing that *Reass* "appears to be a relic" and holding that venue was proper where the defendant *signed* the false statement). This would be beside the point, of course, if *Reass* controlled. But because the facts before us are the very facts that *Reass* tabled for another day, *Reass* does not.

The district court's ruling on venue was not only consistent with universally established principles, as demanded by decisions of both the Supreme Court and also our court, but also with most of the decisions across the country. *See, e.g.*, *United States v. Clark*, 728 F.3d 622, 623–24 (7th Cir. 2013) (finding venue appropriate in Illinois where false statements were *made* even though they were *sent* to a contractor in Missouri); *United States v. Sutton*, 13 F.3d 595, 598–99 (2d Cir. 1994) (finding venue appropriate either where false driver's license applications were *processed* or where clients *received* them); *United States v. Redfearn*, 906 F.2d 352, 353–54 (8th Cir. 1990) (indicating that venue was appropriate where loan application was *filled out* or where it was *approved*); *United States v. Candella*, 487 F.2d 1223, 1227–28 (2d Cir. 1973) (finding venue either where false statements were "prepared, executed and handed" off or where the agency *made the decision* to approve the application); *Haddad v. United States*, 349 F.2d 511, 515 (9th Cir. 1965) (finding venue appropriate where fraudulent statement was *prepared* even though it was *delivered* to the American consulate in Jordan); *United States v. Ruehrup*, 333 F.2d 641, 642–44 (7th Cir. 1964) (finding venue appropriate where false statement was *prepared and deposited in the mail* even though it was *received* in another State); *Henslee v. United States*, 262 F.2d 750, 753 (5th Cir. 1959) (finding venue appropriate where false

statement was *prepared and mailed* or where it was *received*); *United States v. Miller*, 246 F.2d 486, 487–88 (2d Cir. 1957) (indicating that venue would be appropriate where false claim *was transmitted* even though it was *mailed* to another State).

In restricting venue based on *Reass*, which expressly excepted from its holding the circumstances presented here, the majority not only misapplies *Reass*, but it also ignores the well-established rule that we have clearly announced — in no less than 7 decisions following *Reass* — that venue lies where any conduct element of the offense was carried out. And compounding that error, the majority fails to give effect to our previous recognition that preparing and transmitting false statements *are conduct elements* for this type of crime. *See Blecker*, 657 F.2d at 632.

At bottom, venue for prosecution of the § 1014 charge against Mosby was clearly appropriate in the District of Maryland, and I would affirm the district court in that regard.


III

Mosby also challenges the language of the model jury instruction for venue that the district court gave to the jury, claiming that it was overbroad such that a jury could consider preparatory acts, as distinguished from essential conduct elements, in determining venue. *See Sterling*, 860 F.3d at 241 ("Acts which are merely 'preparatory' to the underlying offense and its essential conduct . . . cannot provide a basis for venue"). In submitting the venue issue to the jury, however, the district court did not tell the jury that it could find venue on the basis of preparatory acts. It instructed:

> In addition to the elements of the offense, you must consider whether *any act occurred in the furtherance of this crime* in the District of Maryland. . . .

45

If you find that the Government has failed to prove that any act *in the furtherance of the crime* occurred within the District of Maryland, . . . you must then find Ms. Mosby not guilty of the charges.

(Emphasis added).  And as to the elements of the crime, the court instructed the jury:

In order for the Defendant to be found guilty of mortgage fraud as charged, the Government must prove beyond a reasonable doubt each of the following four elements:  First, that the Defendant *made a false statement* or report relating to an application to a mortgage lending business; second, that the Defendant acted knowingly; third, that the false statement or report was made for the purpose of influencing in any way the mortgage lending business' actions; and fourth, that the statement *was submitted* to a mortgage lending business.

(Emphasis added).   The venue instruction was taken almost verbatim from the model federal jury instructions.  *See* 1 Leonard B. Sand et al., *Modern Federal Jury Instructions – Criminal* ¶ 3-11 (2025).  Similar instructions have also been adopted for use by several circuits.  *See, e.g.*, Third Circuit Model Criminal Jury Instructions § 3.09, at 22 (2024); Ninth Circuit Model Criminal Jury Instructions § 6.32, at 149 (2022).  Mosby nonetheless challenges the instruction's use of the "in the furtherance of this crime" language, arguing that it is too broad.

I cannot agree that the use of the phrase "in the furtherance of this crime" in the standard venue jury instruction requires reversal.  First, the meaning of the words "in the furtherance of" is more restricted than Mosby would have it.  "In furtherance of" or "to further" something is to help it forward; to promote it; to advance it.  *See* "Further" and "Furtherance," *Merriam-Webster's Collegiate Dictionary* 509 (11th ed. 2020).  Thus, we have concluded that conduct "*in furtherance of*" a crime is conduct that satisfies its elements.  *See Smith*, 452 F.3d at 335 (emphasis added) (noting that "various acts *in*

46

*furtherance of* the drug conspiracy" satisfied conduct elements and thus supported venue (emphasis added)); *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995) (noting that "a prosecution may be brought in any district in which any act *in furtherance of* the conspiracy was committed" (emphasis added)); *United States v. Anderson*, 611 F.2d 504, 509 n.5 (4th Cir. 1979) (noting that an act "*in furtherance of* the conspiracy" is sufficient to render venue proper in the district in which the act was committed (emphasis added) (citation omitted)). While the underlying crime in these cases was a conspiracy, for which an act in furtherance of the crime is an essential conduct element, the jurors in each case were, all the same, trusted to distinguish essential element conduct — the acts in furtherance of the conspiracy — from preparatory acts. Thus, instructing the jury that venue lies where *any act in furtherance of the crime* was committed is entirely consistent with the words' plain meaning; our historical use of the words, especially when coupled with instructions specifying the conduct elements of the crime, as the district court gave here; and their use in model jury instructions. *See* Sand et al., *supra*, ¶ 3-11; *Smith*, 452 F.3d at 335; *Al-Talib*, 55 F.3d at 928; *Anderson*, 611 F.2d at 509 n.5.

Moreover, if the instruction was indeed erroneous, the error was harmless. *See United States v. Raza*, 876 F.3d 604, 614 (4th Cir. 2017) (noting that erroneous instructions are subject to harmless error review). The evidence presented at trial amply and clearly demonstrated that venue was proper in Maryland by a preponderance of the evidence. It showed that Mosby made the false statement in Maryland by obtaining and signing the false gift letter in Maryland and that she transmitted the statement from Maryland by uploading it to the Internet for use at the closing in Florida. She also engaged her husband

47

to wire the funds from Maryland in support of the gift letter. Both "making" and "transmitting" are conduct elements of the § 1014 crime and justify venue where they were committed.

Mosby's concern that the instruction allowed the jury to consider preparatory acts in finding venue is abated by the fact that the government introduced no preparatory acts when presenting evidence of conduct for purposes of venue.

*      *      *

For these reasons, I would affirm the jury's finding of venue in Maryland, the district court's approval of that finding, and the court's instructions to the jury with respect to venue.