No. 24-4304

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH COURT

**UNITED STATES OF AMERICA,**
*Plaintiff/Appellee*,

**v.**

**MARILYN J. MOSBY,**
*Defendant/Appellant*.

———————————

**On Appeal From the United States District Court
for the District of Maryland
(The Hon. Lydia Kay Griggsby)**

———————————

**PETITION FOR REHEARING EN BANC**

———————————

**JAMES WYDA**
**Federal Public Defender**

**PARESH S. PATEL**
**Assistant Federal Public Defender**
**6411 Ivy Lane, Ste. 710**
**Greenbelt, Maryland 20770**
**(301) 344-0600**
**paresh_patel@fd.org**

**Counsel for Appellant**

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................... ii

Statement of Purpose .................................................................1

Statement of the Case.................................................................3

    A.    Factual Background...............................................................3

    B.    Procedural History...............................................................5

Reasons for Granting Petition......................................................8

I.    The Panel's Rejection of Ms. Mosby's Fundamental-Ambiguity Argument Contradicts Precedent in this Circuit and Others ...........................................8

II.    The Panel's Evidentiary Holding Contradicts Precedent in this Circuit and the Supreme Court in Two Ways...........................................13

Conclusion ...........................................................................17

Certificate Of Compliance

Certificate of Service

# **TABLE OF AUTHORITIES**

Page(s)

<u>Cases</u>

*Old Chief v. United States*, 519 U.S. 172 (1997)............................................2, 14, 17

*United States v. Dillard*, 891 F.3d 151 (4th Cir. 2018) ...........................3, 15, 16, 17

*United States v. Farmer*, 137 F.3d 1265 (10th Cir. 1998)...................................9, 13

*United States v. Lighte,* 782 F.2d 367 (2d Cir. 1986)...............................8, 9, 10, 12

*United States v. Manapat*, 928 F.2d 1097 (11th Cir. 1991)...................................12

*United States v. Mosby*, No. 24-4304, slip. op. (4th Cir. July 11, 2025)...................1

*United States v. Ryan*, 828 F.2d 1010 (3d Cir. 1987)...................................9, 10, 13

*United States v. Sarwari*, 669 F.3d 401 (4th Cir. 2012) ...................................*passim*

<u>Statutes, Rules, and Miscellaneous</u>

Fed. R. App. P. 35(b)(1)(A) and (B)...........................................................................1

Fed. R. Evid. 403 ...................................................................................*passim*

Coronavirus Aid, Relief, and Economic Security Act,
  Pub. L. No. 116-136, 134 Stat. 281 (2020)....................................................*passim*

U.S.C. §457(a)(1); IRS, *Retirement topics: Exceptions to tax on early*
  *distributions* (updated Dec. 8, 2023), https://tinyurl.com/24h7fw75 ....................4

## PETITION FOR REHEARING AND REHEARING EN BANC

Ms. Mosby requests that this Court grant a petition for rehearing *en banc* in the above-captioned case under Federal Rule of Appellate Procedure 35.

## STATEMENT OF PURPOSE

The panel in this case affirmed two perjury convictions against Marilyn Mosby. *See* Exhibit 1 (United States v. Mosby, No. 24-4304, slip. op. (4th Cir. July 11, 2025)). Rehearing *en banc* is imperative because the panel's decision does not simply misapply precedent—it threatens to expand perjury law beyond recognition, erodes basic protections against unfair trials, and invites prosecutors to weaponize vague statutory language against ordinary Americans. Specifically, Ms. Mosby requests rehearing *en banc* under Federal Rule of Appellate Procedure 35(b)(1)(A) and (B) because this case raises issues of exceptional importance and squarely conflicts with binding precedent from the Supreme Court, this Court, and other Courts of Appeals.

*First*, the panel's ruling conflicts with *United States v. Sarwari*, 669 F.3d 401 (4th Cir. 2012), and the published circuit decisions on which *Sarwari* relied. Those cases hold that when a perjury conviction rests on an undefined term, courts must determine whether people "of ordinary intellect could agree" on its meaning or whether the term could be "used with mutual understanding" absent a definition. *Id.* at 407. The panel bypassed that inquiry entirely, instead upholding Ms.

1

Mosby's conviction based on a jury instruction supplied to the jury after the fact—
almost four years after Ms. Mosby submitted her application for withdrawal of her
own retirement funds based on "adverse financial consequences."  But the correct
question is whether the statutory phrase "adverse financial consequences"—
undefined by Congress, the IRS, or any agency—was fundamentally ambiguous at
the time she certified her withdrawal.  Properly applied, *Sarwari* makes plain that it
was.

That error is not academic. Ms. Mosby is the only person in the nation ever
prosecuted under the 2020 Coronavirus Aid, Relief, and Economic Security Act
(CARES Act) for certifying "adverse financial consequences," though hundreds of
Baltimore residents made identical certifications.  By lowering the bar for
ambiguity, the panel's ruling greenlights perjury prosecutions based on vague,
undefined terms—exposing ordinary citizens to criminal liability for words they
cannot reasonably interpret.

*Second*, the panel's decision defies *Old Chief v. United States*, 519 U.S. 172
(1997), by allowing irrelevant and highly prejudicial evidence about how Ms.
Mosby used her withdrawn retirement funds.  This evidence had no bearing on
whether she experienced "adverse financial consequences," but rather its
admission inflamed the jury, precisely the kind of prejudice Rule 403 was meant to
prevent.

2

*Third*, the panel disregarded this Court's command in *United States v. Dillard*, 891 F.3d 151 (4th Cir. 2018) that trial courts must consider recognized constraints on their discretion.  The district court never addressed Ms. Mosby's juror-confusion argument relating to the use-of-retirement-funds evidence, and the panel excused that silence—sanctioning a clear abuse of discretion and compounding the prejudice.

In short, the panel's decision is not a routine error; it is a blueprint for future prosecutions that weaponize ambiguity, expand perjury liability, and strip away evidentiary safeguards.  Rehearing *en banc* is urgently necessary to restore fidelity to Supreme Court and circuit precedent, safeguard the integrity of federal trials, and prevent this dangerous precedent from taking root.

## STATEMENT OF THE CASE

### A.    Factual Background

Near the end of her eight years as Baltimore City's elected State's Attorney, Ms. Mosby set out to "establish … financial independence" from her husband, from whom she was separating.  JA2060; *see* JA2057.[1]  In 2019, she incorporated a set of travel-related businesses under the name "Mahogany Elite."  JA2742; JA2745-2746.  That business did not immediately take on clients or generate

---

[1]    JA refers to the Joint Appendix.

revenue, but Ms. Mosby incurred expenses in establishing the companies and in preparing them to become operational, JA2746.

She also began looking for a home. JA2060. And around that time, she made two withdrawals from her employee-retirement account. Such withdrawals are normally both taxable as regular income and subject to a tax penalty. *See* 26 U.S.C. §457(a)(1); IRS, *Retirement topics: Exceptions to tax on early distributions* (updated Dec. 8, 2023), https://tinyurl.com/24h7fw75. But early in the COVID-19 pandemic, Congress enacted a statute reducing these tax burdens. In particular, Section 2202(a)(1) of the 2020 Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 ("CARES Act") permitted "coronavirus-related" tax-favored withdrawals. These were available to specified categories of individuals, *id.* §2202(a)(4)(A)(ii), including people who had experienced "adverse financial consequences"—an undefined term—from one or more of several COVID-related sources, *id.* §2202(a)(4)(A)(ii)(III).

In 2020, Ms. Mosby requested a $40,000 coronavirus-related withdrawal from her retirement account. JA2736-2738. By signing the distribution-request form, she certified under penalty of perjury that she met "at least one of the qualifications for a distribution as defined under the CARES Act Section 2202(a)(4)(A) summarized below." JA2738. The form instructed her to "check one" of three boxes; she checked the box next to the following "qualification":

4

> I have experienced adverse financial consequences stemming from such virus or disease as a result of:
>
> - Being quarantined, furloughed or laid off
> - Having reduced work hours
> - Being unable to work due to lack of child care
> - The closing or reduction of hours of a business I own or operate

JA2738.

Ms. Mosby subsequently requested another coronavirus-related withdrawal, of $50,000, from her own retirement account. JA2739-2741. Again, she checked a box certifying that she had "experienced adverse financial consequences." JA2741. The relevant language on the first and second forms was identical. *Compare* JA2738 *with* JA2741. After each withdrawal from her retirement account—for which she paid the required taxes—Ms. Mosby purchased a home in Florida. JA2064-2065; JA2068-2069; JA2072-2073.

### B. Procedural History

The government charged Ms. Mosby with perjury (premised on her certifications that she had faced "adverse financial consequences"), JA42-46; JA52-55, and mortgage fraud (premised on representations made in applying for mortgages to help finance the home purchases), JA47-51; JA56-60. Ms. Mosby moved to sever the perjury and mortgage-fraud trials, arguing that absent severance, a jury could cumulate and confuse the evidence as to the two charges, convict her based on improper propensity reasoning, or fail to understand Ms.

Mosby's assertion of the privilege against self-incrimination for one charge but not the other.  JA181-182.  The district court agreed to sever, ruling that Ms. Mosby had "made a strong showing of prejudice to warrant severance," JA181, establishing "'a serious risk that a joint trial'" would prevent the jury from "'making a reliable judgment'" about her guilt or innocence, JA183.

Ms. Mosby moved pre-trial to dismiss the perjury charges, arguing that the term "adverse financial consequences" on the retirement-withdrawal form (which was left undefined by Congress or any federal agency) was "fundamentally ambiguous"—i.e., "not a phrase with a meaning about which men of ordinary intellect could agree," *Sarwari*, 669 F.3d at 407—and "thus insufficient to support a perjury charge."  JA74-75.  The district court denied the motion.  JA159.

Ms. Mosby also moved pre-trial to exclude "evidence regarding how her withdrawn [retirement] funds were used."  JA108.  Such evidence was irrelevant, she argued, because neither the CARES Act nor anything else placed limits on how money withdrawn under that statute could be used.  JA108.  And even if such evidence was relevant, she further argued, its marginal probative value was substantially outweighed by the dangers that it would unfairly prejudice her or confuse the jury.  JA112.  The district court denied the motion, deeming the evidence "relevant to determining whether [Ms. Mosby] experienced 'adverse financial consequences' due to" COVID-19.  JA156.  The court further stated that,

6

although Ms. Mosby had "argue[d] with some persuasion that evidence about how she used the withdrawn funds could elicit jealousy or misgivings by the jury, such concerns d[id] not substantially outweigh the probative value of this evidence." JA156-157. The court did not substantively address Ms. Mosby's argument about the danger of confusing the issues.

Throughout the perjury trial, prosecutors harped on how Ms. Mosby had chosen to use her retirement plan withdrawals, i.e., to help her make down payments. In closing, for example, the prosecution argued that Ms. Mosby had taken "advantage of the situation to commit perjury in order to access $90,000 to purchase a million dollars['] worth of Florida vacation homes." JA810. Indeed, the prosecution referred repeatedly to Ms. Mosby supposedly buying "two Florida vacation homes," JA810, when "[s]he already had a home," JA814. Ms. Mosby, the prosecution reiterated minutes later, "took the money and used it to purchase two vacation homes, a hundred percent of the money." JA818.

Jurors were not instructed, as Ms. Mosby had requested, that the CARES Act "permitted a [retirement-plan] participant to use withdrawal funds for any purpose she wished." JA794-797. The jury found Ms. Mosby guilty on both perjury counts. JA187. At her separate mortgage-fraud trial, she was acquitted of nearly all charged counts but convicted on one count. JA290-291.

A panel of this Court vacated the mortgage-fraud conviction and the
accompanying order that Ms. Mosby forfeit her Longboat Key home.  Slip op.3.
But the panel affirmed the perjury convictions.  *Id.*

### REASONS FOR GRANTING PETITION

I.    THE PANEL'S REJECTION OF MS. MOSBY'S FUNDAMENTAL-AMBIGUITY
      ARGUMENT CONTRADICTS PRECEDENT IN THIS CIRCUIT AND OTHERS

The perjury convictions here rest on the certifications that Ms. Mosby had
suffered "adverse financial consequences" from one of four enumerated categories
of sources on the withdrawal form.  She argued to the panel that "adverse financial
consequences" was so "fundamentally ambiguous" that it could not, under this
Court's precedent, support a perjury conviction.  Although the panel cited circuit
precedent recognizing (in accord with other courts) that "[t]he answer to a
fundamentally ambiguous question may not, as a matter of law, form the basis for
a false statement," *Sarwari*, 669 F.3d at 407, *cited at* slip op.18, it then tacitly
replaced *Sarwari*'s test with a new one.

*Sarwari* (like precedential decisions in the Second, Third, and Tenth
Circuits) requires courts to determine whether people "of ordinary intellect could
agree" to a definition of a fundamentally ambiguous phrase, or if the phrase "could
be used with mutual understanding by a questioner and answerer" absent a
definition, *Sarwari*, 669 F.3d at 407 (quoting *United States v. Lighte*, 782 F.2d
367, 375 (2d Cir. 1986).  The panel skipped that inquiry, concluding that "adverse

8

financial consequences" is not fundamentally ambiguous because the district court—years after the relevant point in time, i.e., when Ms. Mosby signed the withdrawal forms—came up with a definition of the phrase that the panel deemed reasonable.  The district court's "instruction that '[a]dverse financial consequences means an unfavorable or negative outcome related to money[,]'" the panel held, was a "simple and accurate definition of the phrase" that the panel had "no trouble believing people of ordinary intellect would understand."  Slip op.19.

Neither this Court, nor other circuits on which this Court has relied in addressing this issue, has ever determined whether a term was fundamentally ambiguous based on whether an ordinary person would understand a definition that the district court adopted at a later trial.  This Court and at least three other circuits have instead asked whether, in the "context" that Ms. Mosby submitted the form (i.e., *without* the benefit of a jury instruction), all persons of ordinary intellect would "agree" on what "adverse financial consequences" meant or would mutually understand its use *without* a definition.  *Sarwari*, 669 F.3d at 407 (quoting *Lighte*, 782 F.2d at 375, and citing *United States v. Ryan*, 828 F.2d 1010, 1016 (3d Cir. 1987) (subsequent history omitted), and *United States v. Farmer*, 137 F.3d 1265, 1270 (10th Cir. 1998)).  What matters, in other words, is "what the question meant to Defendant *when she answered it*," *Farmer*, 137 F.3d at 1270 (emphasis added),

not whether the district court could successfully instruct a jury to adopt *some* "understandable" reading of the ambiguous term.

The Third Circuit, for example, has held the term "PREVIOUS ADDRESS (Last 5 Years)" on a credit-card application fundamentally ambiguous because "address" could to a person of ordinary intellect mean either "domicile" or "primary residence," such that the defendant's alleged perjury "might well have resulted from an ambiguity in the question itself." *Ryan*, 828 F.2d at 1016. In the Second Circuit, "the ambiguous use of … 'you'" in a question "rose to the level of a fundamental ambiguity" where it was unclear to the defendant whether the question referred to him in his individual capacity "or in his capacity as [a] trustee." *Lighte*, 782 F.2d at 376.

Likewise, here, a proper application of *Sarwari* shows that "adverse financial consequences" is not a phrase "with a meaning about which men of ordinary intellect could agree," 669 F.3d at 407. The word "finance" has multiple meanings, including "the obtaining of funds or capital." Merriam-Webster, *Finance*, https://tinyurl.com/4836mjxr (visited Aug. 19, 2024). And the term was defined nowhere on the withdrawal forms, JA2741, in the CARES Act, or in IRS guidance. Indeed, it does not appear to have been defined anywhere. And it is "open to numerous interpretations," *Ryan*, 828 F.2d at 1017—as tax professionals and lawyers recognized soon after the CARES Act's enactment. One leading

10

commentary, for example, advised that determining whether adverse financial consequences existed was "highly dependent upon a *subjective interpretation* of the facts … of each situation," adding that taxpayers requesting withdrawals on that basis "could be at risk of a different interpretation by the IRS until clear guidance is issued." Goldman Sachs, *CARES Act: Penalty-free withdrawals* (Sept. 9, 2020) (emphasis added), https://tinyurl.com/47z86kvm.

Ms. Mosby thus could have reasonably understood "financial consequences" to encompass not only pandemic-related losses of extant assets or future revenue from her nascent travel business, but also a pandemic-related loss of *future* capital investments or other business opportunities—i.e., opportunities to grow and lay groundwork for the business as she prepared to begin operating it upon leaving public service. The latter interpretation encompasses business-related "consequences" that are not easily quantifiable or necessarily directly "related to money"—to quote the district court's cramped definition—but that readers of the form could reasonably deem "financial."

Without acknowledging the foregoing, the panel concluded that "the term is adequately clear because the specific parameters of an 'adverse financial consequence' are set out in the Distribution Request Form itself." Slip op.20. The forms listed "the closing or reduction of hours of a business" as an "example" of an event that an adverse financial consequence could "be the result of," *id.* at 277, and

at trial, the defense argued that the source of Ms. Mosby's adverse financial consequences was the "closing or reduction of hours" of Ms. Mosby's business, Mahogany Elite, JA850-851. But the fact that the forms stated that a plan participant's "adverse financial consequences" had to *stem from* one of four enumerated categories of sources does not resolve the fundamental ambiguity about whether the resulting "adverse financial consequences" include the loss of future business opportunities. That enumeration, in other words, limited the *sources* of qualifying "adverse financial consequences," but did nothing to clarify the meaning of that term. Indeed, Ms. Mosby could have reasonably understood the hopelessly ambiguous term to encompass future loss of capital or the loss of money and expenses already spent due to her travel business becoming inoperable due to COVID.

*      *      *

As this Court and others have recognized, the government "may not provide someone with a confusing and ambiguous form and then prosecute when the answers are inaccurate." *United States v. Manapat*, 928 F.2d 1097, 1102 (11th Cir. 1991); *see also Sarwari*, 669 F.3d at 407; *Lighte*, 782 F.2d at 375. That is what happened here. And absent correction, the panel opinion will leave district courts free to disregard claims of fundamental ambiguity so long as the court can craft a jury instruction that gives some understandable meaning to the term in question.

12

The panel's failure to ask whether the form would have been ambiguous to someone in Ms. Mosby's position contradicts *Sarwari* and the many out-of-circuit cases that *Sarwari* relies on.

Review is necessary to address this issue of exceptional importance, specifically to ensure that the Court's fundamental-ambiguity doctrine continues to "preclude convictions grounded on surmise or conjecture" and prevent defendants from "unfairly bearing the risks of inadequate" questions—including questions with language drawn from novel emergency legislation like the CARES Act. *Farmer*, 137 F.3d at 1270; *accord Ryan*, 828 F.2d at 1015. Indeed, upholding Ms. Mosby's perjury convictions based on fundamentally ambiguous language would set a dangerous precedent for any and all statutes with fundamentally ambiguous language not defined by Congress or any federal agency.

## II.    THE PANEL'S EVIDENTIARY HOLDING CONTRADICTS PRECEDENT IN THIS CIRCUIT AND THE SUPREME COURT IN TWO WAYS

Before trial, Ms. Mosby moved to exclude evidence and argument about her use of the withdrawn retirement funds, namely, making down payments on her homes. JA108. This "use evidence," she argued, was irrelevant or, alternatively, created an intolerable risk of unfair prejudice and jury confusion. JA108. In affirming the district court's denial of that motion, *see* slip op.20-24, the panel contradicted precedent in this circuit and the Supreme Court in two ways.

Federal Rule of Evidence Rule 403 allows for the exclusion even of "relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues," or "misleading the jury." Where "the only reasonable conclusion"—*after* considering "evidentiary alternatives"— "was that the risk of unfair prejudice did substantially outweigh" the relevant evidence's "discounted probative value," exclusion is necessary. *Old Chief v. United States*, 519 U.S. 172, 184-185, 191 (1997). Here, the panel did not conduct that legally required balancing, (1) instead declaring the evidence relevant *without* evaluating alternatives, and (2) *without* considering juror confusion created by the government's pervasive (and factually unfounded) appeal to Ms. Mosby's supposed wealth—a risk that this Court has held cannot be tolerated.

1. *First*, as to relevance, the panel stated that how Ms. Mosby used the withdrawn retirement funds was relevant to "whether she suffered an adverse financial consequence as a result of COVID-19." Slip op.21. But the panel did not—as required, *see Old Chief*, 519 U.S. at 191—consider in its relevance analysis the other evidence about Ms. Mosby's general financial condition, her business, and the losses (or lack of losses) to it that the jury considered and that was *more* probative of whether she had suffered adverse financial consequences. *See* slip op.4; Opening Br.7-8; JA2057; JA2060; JA2742; JA2745-2746. Had it done so, it would necessarily have concluded that the evidence at issue (regarding

14

how she used the funds) had little to no relevance, because neither the CARES Act nor anything else placed limits on how withdrawn funds could lawfully be used (indeed, the government's own contemporaneous IRS guidance and prosecution witness suggested the contrary, JA94; JA475; JA817). Ms. Mosby made no attestation (nor did the form ask for one) about the use to which the funds would be put, including whether they would be used specifically to address or mitigate the adverse financial consequences. Nor did she attest (and again the form did not ask her to) that the withdrawn amounts corresponded in some way to the magnitude of the adverse financial consequences or her resulting financial need.

2.      *Second*, another independent ground for rehearing is the panel's rejection of Ms. Mosby's argument that the use evidence risked "confusing the issues" and "misleading the jury," Fed. R. Evid. 403. The panel rejected this argument upon reasoning that "the district court properly instructed the jury on the elements of perjury," slip op.23. However, as Ms. Mosby argued (Opening Br.47), the district court *never considered* her juror confusion argument, JA156, and circuit precedent holds that it is an abuse of discretion for a district court to "fail to consider [a] judicially recognized factor[] constraining its exercise of discretion," *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

The panel's resort to the jury instructions—which did not address the issue on which the evidence risked confusion—cannot replace the nuanced balancing

that Rule 403 requires and contravenes circuit precedent.  As discussed, the central question here was whether Ms. Mosby knowingly stated falsely that she had experienced "adverse financial consequences."  Allowing evidence (and pervasive argument) about how Ms. Mosby used her withdrawn funds likely misled jurors into believing that their task was to determine whether the adverse financial consequences Ms. Mosby experienced were severe enough to justify the amounts withdrawn, and/or whether the money was used for a permissible purpose.  And jurors were *not* instructed that Ms. Mosby's use of the funds was irrelevant; the district court denied such a clarifying instruction.  JA794-797.  So the instruction on which the panel relied—which clarified only that Ms. Mosby could *withdraw* "without regard to her need for the funds," JA902—did not even address the risk of confusion at issue.[2]

In short, the panel affirmed the district court's admission of highly prejudicial evidence relating to use of retirement funds even though the district court gave no thought to juror confusion likely to be caused by such evidence.  In so doing, the panel's decision squarely conflicts with this Court's precedent in *Dillard*.  And by permitting the introduction of evidence in a criminal case without

---

[2]    It bears noting that it was to address precisely the "serious risk" of confusion that the district court had severed the trials in the first place, JA181, fearing that a joint trial would muddle the issues and prevent the jury from "'making a reliable judgment'" about Ms. Mosby's guilt or innocence, JA183.

any consideration of the juror confusion that it may cause, the panel has set dangerous precedent that this Court should reverse.

## CONCLUSION

Rehearing *en banc* should be granted because this case presents issues of exceptional importance that go to the heart of the integrity of the federal criminal justice system.  By affirming Ms. Mosby's conviction, the panel created precedent that permits perjury prosecutions to rest on vague and undefined statutory language, contrary to *Sarwari* and the settled law of multiple circuits.  It sanctioned the use of highly prejudicial, irrelevant evidence that inflamed the jury, in conflict with *Old Chief* and Rule 403.  And it excused the district court's failure to address jury confusion arguments in direct violation of this Court's precedent in *Dillard*. Left uncorrected, this decision does not just impact Ms. Mosby—it opens the door for prosecutors nationwide to criminalize undefined statutory terms, expand perjury law far beyond its constitutional limits, and erode safeguards against unfair prejudice.  These are precisely the kinds of systemic stakes—questions of statutory clarity, prosecutorial reach, and trial fairness—that demand the full Court's attention on rehearing *en banc*.  Therefore, Ms. Mosby respectfully requests that this Court grant such hearing.

Respectfully submitted,

JAMES WYDA
Federal Public Defender
for the District of Maryland

_____s/ Paresh S. Patel_____
Paresh S. Patel
Assistant Federal Public Defender
Counsel for Appellant
6411 Ivy Lane, Ste. 710
Greenbelt, Maryland 20770
(301) 344-0600
Paresh_Patel@fd.org

Dated September 24, 2025

18

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This Petition for Rehearing and Rehearing En Banc has been prepared using Microsoft Word 2016 software, Times New Roman, 14-point proportional type size.

2.  EXCLUSIVE of the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains no more than 3,900 words, specifically 3,760 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


    September 24, 2025                s/ Paresh S. Patel
           Date                         Paresh S. Patel
                                 Assistant Federal Public Defender

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2025, I electronically filed the fore-going document with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all counsel on record.


    s/  Paresh S. Patel
Paresh S. Patel
Assistant Federal Public Defender