No. 24-4304

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### UNITED STATES OF AMERICA,

Plaintiff – Appellee,

**v.**

### MARILYN J. MOSBY,

Defendant – Appellant.

On Appeal from the United States District Court
for the District of Maryland, Southern Division,
The Honorable Lydia Kay Griggsby, District Judge.

## PETITION OF THE UNITED STATES FOR REHEARING EN BANC

Kelly O. Hayes
United States Attorney

David C. Bornstein
Assistant United States Attorney
Chief, Appellate Division
United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 290-4800

# TABLE OF CONTENTS

Table of Authorities ............................................................................... iii

Introduction and Rule 40(b)(2) Statement .................................................1

Statement of the Issue ...............................................................................2

Background ...............................................................................................2

    A.    18 U.S.C. § 1014 ...........................................................................2

    B.    Procedural History ........................................................................3

Argument....................................................................................................9

    I.    *Reass* is wrong under modern venue principles and should be overruled..............................................................................................9

    II.    The panel majority's decision is in tension with how this Court construes venue for other false-statement offenses and how other circuits construe venue for both § 1014 and other false-statement offenses ............................................................................................12

    III.    Proper venue for § 1014 offenses is an issue of exceptional importance ...........................................................................................14

Conclusion ...............................................................................................15

Certificates of Compliance and Service.....................................................17

## TABLE OF AUTHORITIES

### <u>CASES</u>

*Babb v. Wilkie*, 589 U.S. 399 (2020) ........................................................10

*Thompson v. United States*, 604 U.S. 408 (2025)........................................2

*United States v. Anderson*, 328 U.S. 699 (1946) .................................9–12

*United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997) ......................2, 14

*United States v. Ayon-Brito*, 981 F.3d 265 (4th Cir. 2020) ....................14

*United States v. Barsanti*, 943 F.2d 428 (4th Cir. 1991) ........................13

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ......................14

*United States v. Blecker*, 657 F.2d 629 (4th Cir. 1981)......................2, 8, 12–13, 15

*United States v. Bowens*, 224 F.3d 302 (4th Cir. 2000)....................10, 12

*United States v. Brown*, 898 F.3d 636 (5th Cir. 2018) ...........................11

*United States v. Clark*, 728 F.3d 622 (7th Cir. 2013)..............................13

*United States v. Giles*, 300 U.S. 41 (1937)  ......................................10–11

*United States v. Greene*, 862 F.2d 1512 (11th Cir. 1989) ..................2, 14

*United States v. Jones*, 231 F.3d 508 (9th Cir. 2000)..............................13

*United States v. Miller*, 808 F.3d 607 (2d Cir. 2015) .............................10

*United States v. Mosby*, 143 F.4th 264 (4th Cir. 2025) .................3–8, 15

*United States v. Newsom*, 9 F.3d 337 (4th Cir. 1993) ...............................9

*United States v. Oceanpro Industries, Ltd.*, 674 F.3d 323 (4th Cir. 2012) .............10

*United States v. Reass*, 99 F.2d 752 (4th Cir. 1938)............. 1–2, 7–9, 11–12, 14–16

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999).............................2, 9–12

*United States v. Ruehrup*, 333 F.2d 641 (7th Cir. 1964) ....................2, 14

*United States v. Wuagneux*, 683 F.2d 1343 (11th Cir. 1982) ..................................13

*United States v. Zwego*, 657 F.2d 248 (10th Cir. 1981) ......................................2, 14

## STATUTES

12 U.S.C. § 1441(a) (1932).............................................................................2, 7

18 U.S.C. § 287...............................................................................................12

18 U.S.C. § 924(a)(1)(A) .................................................................................13

18 U.S.C. § 1001 .........................................................................................13–14

18 U.S.C. § 1014....................................................................................*passim*

18 U.S.C. § 1621 ...............................................................................................5

Coronavirus Aid, Relief, and Economic Security Act (2020) ..................................3

## OTHER AUTHORITIES

*Make*, Black's Law Dictionary (12th ed. 2024).......................................................10

*Make*, Random House Dictionary of the English Language (1966).......................10

*Make*, Webster's International Dictionary (2d ed. 1934) .......................................11

## INTRODUCTION AND RULE 40(B)(2) STATEMENT

The panel majority resurrected, over Judge Niemeyer's dissent, a nearly 90-year-old decision construing a long-defunct statute to hold that the crime of making a false statement under 18 U.S.C. § 1014 cannot be prosecuted in the district where the statement was made or prepared. The panel majority believed that it was bound by *United States v. Reass*, 99 F.2d 752 (4th Cir. 1938), to hold that venue lies instead only where the statement was transmitted to its recipient. But *Reass* has been rightly criticized as a "relic" that is inconsistent with the modern consensus that the making or preparing of a false statement gives rise to venue, too. The difference matters to every future § 1014 prosecution in the circuit and also to this case: It affects where defendant Marilyn Mosby may be retried and whether she needs to be retried at all (*i.e.*, whether any error in the jury's venue instruction was harmless).

*Reass* should be overruled. It is an outlier that would be decided differently today under the Supreme Court's modern venue principles. It is also in tension with this Court's later rule (as well as the rule of every other circuit to define venue under § 1014) that when a statute punishes anyone who "makes" a false statement, venue lies at least in the district where the statement was "made or prepared."

The government respectfully petitions the Court to rehear this issue en banc because where venue lies for § 1014 offenses is of exceptional importance and the

1

panel majority's ruling is in tension with decisions by the Supreme Court, this Court, and other circuits. *See, e.g.*, *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999); *United States v. Blecker*, 657 F.2d 629, 632-33 (4th Cir. 1981); *United States v. Angotti*, 105 F.3d 539, 543-44 (9th Cir. 1997); *United States v. Greene*, 862 F.2d 1512, 1515-16 (11th Cir. 1989); *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981); *United States v. Ruehrup*, 333 F.2d 641, 643 (7th Cir. 1964).

## STATEMENT OF THE ISSUE

Whether venue for the offense of making a false statement under 18 U.S.C. § 1014 lies in the district where the false statement was made or prepared.

## BACKGROUND

## I.      18 U.S.C. § 1014

"Congress originally enacted § 1014 as part of its recodification of the federal criminal code in 1948." *Thompson v. United States*, 604 U.S. 408, 415 (2025). The new statute "brought together" thirteen "predecessor statutes," including eleven that "prohibited 'false' statements." *Id.* at 416. *Reass* involved one of those predecessor statutes, which punished "whoever makes any statement, knowing it be false, for the purpose of influencing in any way the action of a Federal Home Loan Bank upon any application." *Reass*, 99 F.2d at 752 (citing 12 U.S.C. § 1441(a) (1932)).

Today, § 1014 provides as relevant: "Whoever knowingly makes any false

2

statement . . . for the purpose of influencing in any way the action of . . . a mortgage lending business . . . upon any application . . . shall be [punished]." The statute covers more than false statements made for the purpose of influencing mortgage lenders— it also covers false statements made for the purpose of influencing a laundry list of financial institutions and agencies, including the Federal Housing Finance Agency, the Federal Housing Administration, the Farm Credit Administration, the Federal Crop Insurance Corporation, a Federal Reserve bank, a Federal home loan bank, and any institution insured by the Federal Deposit Insurance Corporation. *See* § 1014.

## II.    Procedural History

1.    Defendant Marilyn Mosby served in elected public office as Baltimore City State's Attorney in Maryland from 2015 to 2023. *United States v. Mosby*, 143 F.4th 264, 269 (4th Cir. 2025) (underlying panel opinion). In 2020, during the height of the COVID-19 pandemic, Mosby wanted to invest in Florida real estate but lacked the money to do so. *Id.* at 269-70. So she committed perjury twice to take two early distributions from her retirement account under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). *Id.* To show that she was eligible for each distribution, she falsely certified under penalty of perjury that she had "experienced adverse financial consequences stemming from [COVID-19]" as a result of one of four enumerated exigencies related to her ability to work.

3

*Id.* at 270. But as Baltimore's chief prosecutor, she had not experienced any such consequences—she continued to work full-time, made an even larger salary in 2020 ($247,955.58) than she had in 2019, and was one of only three people in her office of more than 400 to take an early distribution. Dkt. 75 at 4.

Armed with her first distribution of $40,000, Mosby used the ill-gotten money to cover the down payment and closing costs for a property in Kissimmee, Florida. *Mosby*, 143 F.4th at 270. She committed perjury again to get a second distribution—this time, of $50,000—which she used to pay the down payment and closing costs for a condo in Longboat Key, Florida. *Id.* She funded the rest of those purchases by taking out mortgages of $490,500 and $428,400, respectively. Dkt. 75 at 5-6.

About two weeks before she needed to close on the Longboat Key property, Mosby learned that her assets fell $5,000 short of satisfying the mortgage lender's underwriting requirements. *Mosby*, 143 F.4th at 270. On February 9, 2021, to cover the shortfall, Mosby's mortgage broker emailed her a template for a gift letter, which stated that her husband "made a gift of $5,000 [to her] to be transferred [at closing]." *Id.* at 271. The gift letter stated that the parties signing it were certifying that the gift funds were "not made available to [Mosby's husband]" by anyone "with an interest in the sale of the property . . . [or] associated with [the] transaction." *Mosby*, 143 F.4th at 271; JA2747 (gift letter). The mortgage broker told Mosby that they could

4

get her mortgage "clear to close tomorrow" with the gift letter. JA1847-1848. After printing and filling out the gift letter, Mosby and her husband signed it by February 10, 2021—the day after she received it. *Id.* That same day, the mortgage lender's files reflected a gift from Mosby's husband and said that her mortgage was now clear to close. *Mosby*, 143 F.4th at 271; Dkt. 75 at 6.

But the gift letter was a lie. Mosby's husband did not gift her $5,000 and did not even have $5,000 in the bank account the gift was supposed to come from. Dkt. 75 at 6. Instead, Mosby wired her husband $5,000, which he then wired back to her as the "gift" that was meant to increase her assets so that she could qualify for the mortgage. *Id.*; *see also Mosby*, 143 F.4th at 271. Mosby then flew from Maryland to Florida on February 16, 2021, and closed on the Longboat Key condo in person on February 19, 2021. *Mosby*, 143 F.4th at 271-72. She paid 90% of its purchase price with the mortgage she had fraudulently obtained. Dkt. 75 at 6.

2.     Mosby was charged in the District of Maryland with two counts of perjury, in violation of 18 U.S.C. § 1621, and two counts of mortgage fraud, in violation of 18 U.S.C. § 1014. The district court severed the perjury from the fraud charges so that Mosby could "assert her Fifth Amendment privilege" in one trial but not the other. She went to trial first on the perjury charges and was convicted on both counts. *Mosby*, 143 F.4th at 272-73.

5

Mosby then proceeded to trial on the fraud charges. As to venue, the evidence showed that she spent early 2021—including the two days (February 9 and 10) when she prepared and signed the gift letter—in Maryland. Among other things, her bank statements showed that all her in-person debit-card (or check-card) transactions from December 15, 2020, to February 15, 2021, took place in Maryland. Dkt. 75 at 17-19. On February 4, 8, and 16, 2021, Mosby used her debit card for several in-person transactions in Maryland. JA2757, JA2762. On February 16, she left Maryland and flew to Florida to close on the Longboat Key property. *See* JA2763; *see also Mosby*, 143 F.4th at 287 (Niemeyer, J., dissenting).

After the government's case-in-chief, Mosby challenged the sufficiency of the evidence of venue and argued that the venue instruction erroneously allowed the jury to find venue based on mere preparatory acts. The court denied both motions, and the jury convicted her of mortgage fraud by making a false statement in the gift letter for the Longboat Key condo's mortgage application. *Mosby*, 143 F.4th at 274-75.

The district court sentenced Mosby to time served, followed by three years of supervised release. It also ordered her to forfeit 90% of her interest in the Longboat Key property. *Id.* at 275.

3.    On appeal, a panel of this Court unanimously affirmed Mosby's perjury convictions, *Mosby*, 143 F.4th at 276-79, but it divided over whether to affirm her

6

mortgage-fraud conviction, *id.* at 279-91. Mosby challenged her fraud conviction by arguing, among other things, that the jury was erroneously instructed that it could find venue in Maryland based on mere preparatory conduct. *Id.* at 279-82.

The panel majority ruled that "[t]he controlling authority to discern the line between essential conduct and mere preparatory conduct for § 1014" is this Court's 1938 opinion in *Reass*, which had construed venue for a false-statement crime under one of § 1014's predecessor statutes—former 12 U.S.C. § 1441(a) (1932). *Id.* at 280. *Reass* held that the crime of making a false statement took place only where the false statement was "communicated" to the Federal home loan bank. *Id.* (quoting *Reass*, 99 F.2d at 755). Based on *Reass*, the panel majority concluded that venue lies only where Mosby "transmitted the Gift Letter" to the mortgage lender, not where her "preparing, filling out, or signing the Gift Letter" took place. *Id.* at 281-82.

After holding that the venue instruction erroneously allowed the jury to find venue based on mere preparatory acts, the panel majority turned to whether the error was harmless. *Mosby*, 143 F.4th at 282. Although the panel majority acknowledged that "a rational factfinder could infer that [Mosby] sent the Gift Letter from her home in Baltimore," it nonetheless held that the error was not harmless because the jury could have also found that she "took the Gift Letter with her when she travelled to Florida on February 16 and transmitted it . . . from that district" or that "there was

7

insufficient evidence to determine that fact, one way or the other." *Id.* at 283. That holding hinged on the idea that venue lies only where she transmitted the gift letter. The panel majority vacated her fraud conviction, declined to consider her non-venue challenges to it or her forfeiture challenge, and remanded for retrial. *Id.* at 284.

Judge Niemeyer dissented from the panel majority's venue decisions. *Id.* at 284 (Niemeyer, J., dissenting). He would have held that "*Reass* does not" control venue in this case and that in any event *Reass* is "in tension with" later Supreme Court and Fourth Circuit precedents, as well as with caselaw in other circuits. *Id.* at 288-89. The reason for this tension, Judge Niemeyer noted, is that *Reass* was decided in 1938 "before all of the governing Supreme Court decisions were handed down, prescribing the appropriate analysis." *Id.* at 287. He agreed with the government, *see* Dkt. 75 at 25-27, that *United States v. Blecker*, 657 F.2d 629, 632-33 (4th Cir. 1981), sets forth where venue lies for a false-statement offense like § 1014. Under *Blecker*, "both the *preparation* of the false claim and its *mailing* [are] conduct elements sufficient to justify venue." *Mosby*, 143 F.4th at 288 (Niemeyer, J., dissenting). With venue also lying where Mosby prepared the gift letter, Judge Niemeyer would have held that any error in the venue instruction was "harmless"[1] because the evidence

---

[1] Judge Niemeyer would have also held that there was no error in the jury's venue instruction. The government is not seeking rehearing of that issue.

8

"amply and clearly demonstrated" that "Mosby made the false statement in Maryland by obtaining and signing the false gift letter in Maryland." *Id.* at 290.

**ARGUMENT**

By resurrecting *Reass*, the panel majority established a narrow rule of venue for false-statement crimes under § 1014 that is in clear tension with the broader rule for false-statement crimes in this and other circuits. Indeed, every other circuit to define venue under § 1014 has said that it lies *both* where the false statement was received *and* where it was made or prepared. That *Reass* came out differently in 1938 is a testament to its age as well as how much the Supreme Court has developed and refined venue principles since then. This issue is of exceptional importance and warrants rehearing en banc.

**I.   *Reass* is wrong under modern venue principles and should be overruled.**

If *Reass* were decided today, it would come out differently. *Reass* was issued eight years before the Supreme Court "first announced" the test establishing modern venue analysis.[2] *Rodriguez-Moreno*, 526 U.S. at 279 n.1 (referring to *United States v. Anderson*, 328 U.S. 699 (1946)); *see also United States v. Newsom*, 9 F.3d 337, 339 (4th Cir. 1993) (calling *Anderson* "the definitive case for determining the situs

---

[2]  The Constitution safeguards a defendant's right to be tried in the "State" and "district" where the crime was "committed." U.S. Const. art. III, § 2, cl. 3; *id.* amend. VI. A venue analysis determines where the crime was "committed."

9

of a crime"). In *Anderson*, the Supreme Court held that a crime's "*locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." 328 U.S. at 703. The Supreme Court later "built on *Anderson*" in *Rodriguez-Moreno*, *United States v. Miller*, 808 F.3d 607, 615 (2d Cir. 2015), by "set[ting] forth a two-part test for making this determination," *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 328 (4th Cir. 2012). It "instructed [that] . . . 'a court must identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.'" *United States v. Bowens*, 224 F.3d 302, 308-09 (4th Cir. 2000) (quoting *Rodriguez-Moreno*, 526 U.S. at 279). Under that governing test, venue for the offense of making a false statement exists not only where the statement was later communicated to its recipient, but also where the statement was first prepared or composed. That is because the making of a statement encompasses *both* its composition *and* its transmission (if any).

At all relevant times, the verb "to make" has meant, among other things, "[t]o cause (something) to exist." *Make*, Black's Law Dictionary (12th ed. 2024) (primary definition); *see also Babb v. Wilkie*, 589 U.S. 399, 406 (2020) ("the verb 'to make' . . . means 'to bring into existence,' 'to produce,' 'to render,' and 'to cause to be or become'" (quoting Random House Dictionary of the English Language 866 (1966)); *United States v. Giles*, 300 U.S. 41, 48 (1937) ("[t]he word 'make' has many

10

meanings, among them 'To cause to exist, appear or occur'" (quoting Webster's International Dictionary, 2d ed.)). So as a matter of ordinary English, "the conduct constituting the offense" of making a false statement, *see Rodriguez-Moreno*, 526 U.S. at 279, includes creating or composing the false statement, *see Giles*, 300 U.S. at 48-49 (holding that a defendant "makes [a] false entry" when he "personally writes the false entry or affirmatively directs another so to do"). Indeed, before any written statement can be made in the narrow sense of "communicated" to another, it must first be made in the sense of "composed." *See, e.g.*, *Reass*, 99 F.2d at 753 n.1, 755 (noting that the statements in that case were "[m]ade . . . in the sense of 'composed'" before they were made in the sense of "communicated"). So *Reass* unduly restricted venue by holding that when the defendant "prepared, filled out and signed" his false statements, those essential acts were "no part of the crime itself." *Reass*, 99 F.2d at 753, 755. The en banc Court should overrule and correct that holding—a "relic" that "seems inconsistent with the Supreme Court's [later] instruction that the location of a crime 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Brown*, 898 F.3d 636, 641 (5th Cir. 2018) (quoting *Anderson*, 328 U.S. at 703) (criticizing *Reass*).

Instead of tying venue to the location of *all* the acts constituting the making of a false statement, *Reass* tied it to *only one* of them. Despite acknowledging that a

11

false statement is made both when it is "composed" and when it is later "deliver[ed]" or "communicated" to its recipient, *Reass* believed that venue should lie only in the district where the "gist of the offense" occurs. *Reass*, 99 F.2d at 753 n.1, 755 & n.4. The "gist of the offense," *Reass* said, turned on the statute's purpose, which was "to protect the Federal Home Loan Banks from fraudulent attempts to secure favorable action on applications for loans." *Id.* at 755. Thus, *Reass* held that "the crime takes place" "only when [the false statements] are communicated to the lending bank." *Id.* But that purpose-based analysis conflicts with the conduct-based analysis that is now required. *See Bowens*, 224 F.3d at 311 (holding that *Rodriguez-Moreno* "require[s] us to determine venue solely by reference to the essential conduct elements of the crime, without regard to Congress's purpose in forbidding the conduct").

## II. The panel majority's decision is in tension with how this Court construes venue for other false-statement offenses and how other circuits construe venue for both § 1014 and other false-statement offenses.

By limiting venue for § 1014 offenses to the district where the false statement was communicated to its recipient, the panel majority has crafted a venue rule that is far narrower than the rule that this Court applies to other false-statement offenses and that other circuits apply to both § 1014 and other false-statement offenses.

In *United States v. Blecker*, 657 F.2d 629 (4th Cir. 1981), this Court applied *Anderson* to determine where venue lies to try a defendant who "makes or presents"

12

a false claim under 18 U.S.C. § 287. *Id.* at 632. The Court held that "venue lies . . . in either the district in which the claims were *made or prepared* or the one in which they were presented." *Id.* at 632 (internal citations omitted) (emphasis added). The Court later held that *Blecker*'s venue analysis also applies to the offense of "making" false statements under 18 U.S.C. § 1001 and that the false statements in that case were "made" when the defendant "signed" them. *United States v. Barsanti*, 943 F.2d 428, 431, 434-45 (4th Cir. 1991). So for analogous false-statement crimes, this Court has said that venue lies where the statement was made by being prepared or signed. There is no reason why the Court's default venue rule should not apply to § 1014.

Other courts agree with this straightforward analysis. *See, e.g.*, *United States v. Clark*, 728 F.3d 622, 625 (7th Cir. 2013) (holding that "one can hardly characterize the making of a false writing or document as 'merely preparatory' conduct when the offenses charged are 'making a false writing or document'"); *see also United States v. Wuagneux*, 683 F.2d 1343, 1356 (11th Cir. 1982) (citing *Blecker* for "the general rule of venue under the various false statement and false claim statutes" and applying it to a § 1014 false-statement offense). Simply put, where the crime is making a false statement, venue generally lies where the statement was prepared. *E.g.*, *United States v. Jones*, 231 F.3d 508, 516 (9th Cir. 2000) (construing venue for making a false statement under 18 U.S.C. § 924(a)(1)(A) and holding that venue was proper where

13

the defendant "began the crime . . . by preparing the renewal application" containing the false statement); *United States v. Bilzerian*, 926 F.2d 1285, 1301 (2d Cir. 1991) (construing venue for § 1001 and holding that "[t]he documents were prepared and signed—i.e., 'made'—within the Southern District of New York, and thus venue was properly laid there"). Indeed, every other circuit to define venue for § 1014 crimes has held that it lies both where the false statement was "prepared" and where it was "received." *See Angotti*, 105 F.3d at 543-44; *Greene*, 862 F.2d at 1515; *Zwego*, 657 F.2d at 251; *Ruehrup*, 333 F.2d at 643. *Reass* is the clear outlier.

## III.    Proper venue for § 1014 offenses is an issue of exceptional importance.

The issue of where false-statement offenses under § 1014 may be prosecuted is one of exceptional importance to the administration of justice. Identifying "the appropriate venue for criminal prosecutions and trials serves an important policy of procedural fairness," *United States v. Ayon-Brito*, 981 F.3d 265, 271 (4th Cir. 2020), and those values are compromised when the "number of available venues" is unduly restricted, *see id.* Section 1014 covers far more than Mosby's mortgage fraud. It broadly covers the making of "any false statement . . . for the purpose of influencing in any way the action of" a long list of important financial institutions and agencies "upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance

or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor." § 1014. So whether those offenses may be tried in the district where the false statement was first made or prepared—as opposed to only in the district where the statement was later transmitted—has far-reaching consequences.

In this case, Mosby first needed to make the false statement in the gift letter by filling out and signing it before she could transmit that statement to the mortgage lender. Until she made the false statement, she had nothing to transmit, showing that the filling out and signing of that false statement was an essential part of the conduct proscribed by § 1014. The panel majority nonetheless held—because it believed that it was bound by *Reass* to do so—that those acts were "preparatory" to her crime of making a false statement and "no part of the crime itself." *Mosby*, 143 F.4th at 280 (quoting *Reass*, 99 F.2d at 755). That decision warrants rehearing en banc.[3]

## CONCLUSION

By resurrecting *Reass*, the panel majority adopted a narrow venue rule for § 1014 offenses that is in tension with governing venue principles and the caselaw

---

[3] To be clear, the government is not seeking rehearing on whether the panel majority correctly concluded that it was bound by *Reass*. Regardless of whether that decision was correct, the panel majority applied *Reass*, which should be overruled and replaced with the Court's default venue rule in *Blecker*. *See supra* at pp. 12-13.

15

construing venue for this as well as other false-statement offenses. The Court should grant hearing en banc to overrule *Reass* and hold that venue for § 1014 offenses also lies in the district where the false statement was prepared or signed.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/ David C. Bornstein
Assistant United States Attorney
Chief, Appellate Division
United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 290-4800

16

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation set forth in Fed. R. App. P. 40(d)(3)(A) because it contains 3,889 words, excluding the parts exempted under Fed. R. App. P. 32(f).

This petition also complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced serif typeface and plain, roman style using Times New Roman in 14 point.

Dated: September 24, 2025                    /s/ David C. Bornstein
                                             Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 24, 2025, I electronically filed this petition with the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system and thereby electronically served it on Appellant Marilyn Mosby through her counsel of record, who are registered ECF Filers.

Dated: September 24, 2025                    /s/ David C. Bornstein
                                             Assistant United States Attorney

17