No. 24-4304

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARILYN J. MOSBY,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Maryland, No. 1:22-cr-00007 (Griggsby, J.)

## MARILYN MOSBY'S RESPONSE
## TO THE UNITED STATES'S PETITION FOR REHEARING EN BANC

JAMES WYDA
MAGGIE GRACE
OFFICE OF THE FEDERAL
   PUBLIC DEFENDER
100 S. Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962

PARESH S. PATEL
CULLEN O. MACBETH
OFFICE OF THE FEDERAL
   PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

DANIEL S. VOLCHOK
CARRIE M. MONTGOMERY
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

ALAN SCHOENFELD
CHARLES C. BRIDGE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800

NITISHA BARONIA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
50 California Street, Suite #3600
San Francisco, California 94111
(628) 235-1000

October 30, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................... ii

INTRODUCTION ...................................................................... 1

STATEMENT ............................................................................ 3

    A.    Relevant Facts ............................................................. 3

    B.    District-Court Proceedings ........................................ 4

    C.    The Panel Decision ................................................... 4

ARGUMENT ............................................................................ 7

I.    THE PANEL DECISION IS CORRECT AND DOES NOT CONFLICT (OR CREATE "TENSION") WITH ANY OTHER DECISION ........................................... 7

    A.    The Panel Correctly Applied The Supreme Court's Venue Precedent And—Like *Reass*—Correctly Interpreted §1014 ........................................ 7

    B.    There Is No "Tension," Much Less Conflict, With Other Circuit Cases ................................................ 13

II.    THE PANEL'S VENUE-INSTRUCTION HOLDING IMPLICATES NO QUESTION OF EXCEPTIONAL IMPORTANCE ................................... 16

CONCLUSION ....................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Dubin v. United States*, 599 U.S. 110 (2023) ...........................................11

*Eggleston v. Surgey*, 2025 WL 2803608 (E.D. Va. Sept. 17, 2025) .....................17

*Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015)................................12

*Kisor v. Wilkie*, 588 U.S. 558 (2019).........................................................12

*National Association of Manufacturers v. Department of Defense*, 583 U.S. 109 (2018)................................................................................14

*Payne v. Taslimi*, 998 F.3d 648 (4th Cir. 2021).............................................12

*Reass v. United States*, 99 F.2d 752 (4th Cir. 1938)......................................*passim*

*Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) .............................................9

*Thompson v. United States*, 604 U.S. 408 (2025)...........................................11

*United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997) .........................................15

*United States v. Barsanti*, 943 F.2d 428 (4th Cir. 1991) .......................................13

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) .....................................14

*United States v. Blecker*, 657 F.2d 629 (4th Cir. 1981)...................................13, 14

*United States v. Bowens*, 224 F.3d 302 (4th Cir. 2000).........................................12

*United States v. Brown*, 898 F.3d 636 (5th Cir. 2018) .............................................9

*United States v. Cabrales*, 524 U.S. 1 (1998)...............................................5, 12, 17

*United States v. Clark*, 728 F.3d 622 (7th Cir. 2013).............................................14

*United States v. Greene*, 862 F.2d 1512 (11th Cir. 1989) .......................................15

*United States v. Jones*, 231 F.3d 508 (9th Cir. 2000).............................................14

*United States v. Katzoff*, 268 F.Supp.2d 493 (E.D. Pa. 2003) .................................15

*United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005)........................................5

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999)........................4, 8, 9, 10

*United States v. Ruehrup*, 333 F.2d 641 (7th Cir. 1964) ........................................15

*United States v. Salinas*, 373 F.3d 161 (1st Cir. 2004)...........................................14

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (*en banc*) ...........................12

*United States v. Sterling*, 860 F.3d 233 (4th Cir. 2017) .......................................5, 6

*United States v. Wuagneux*, 683 F.2d 1343 (11th Cir. 1982) .................................15

*United States v. Zwego*, 657 F.2d 248 (10th Cir. 1981) ........................................15

## STATUTES AND RULES

12 U.S.C. §1441 (1934) ...........................................................................................8

18 U.S.C.
    §287 ....................................................................................................14
    §1001 ..................................................................................................13
    §1014 ...........................................................................................*passim*

Federal Rule of Appellate Procedure 40 ..............................................................18

## OTHER AUTHORITIES

Merriam-Webster, *On*, https://tinyurl.com/3p2bwm27 (visited Oct. 30, 2025) ................................................................................................................10

Merriam-Webster, *Upon*, https://tinyurl.com/3unznsew (visited Oct. 30, 2025) ......................................................................................................10

# INTRODUCTION

The panel vacated appellant Marilyn Mosby's mortgage-fraud conviction because the district court's jury instructions allowed prosecutors to prove venue in Maryland based on where jurors found *preparatory acts* to have occurred, when this Court's precedent holds that preparatory acts cannot provide a basis for venue. The government does not challenge that holding. Instead, it asks the Court to convene en banc to overrule longstanding precedent about whether Congress intended just writing and/or signing a false statement, rather than actually communicating it, to be an essential element of "mak[ing] any false statement" under 18 U.S.C. §1014, such that it can support federal criminal liability. That request should be rejected, both because the panel's vacatur is correct—under Supreme Court precedent, this Court's precedent, and foundational stare-decisis principles that the government *never even mentions*—and because nothing in the government's petition satisfies the stringent standards for an expenditure of the en banc Court's scarce resources.

First, the vacatur does not conflict with other decisions. In fact, the government hardly asserts otherwise, arguing largely that there is "tension" with other decisions (Pet.1-2, 8-10, 12, 15). That would not justify rehearing if it were correct. But it is not correct. The panel performed the precise venue inquiry that the government (correctly) describes as the "governing test," Pet.10. And the

circuit decisions the government cites either involved statutes other than §1014 or did not address whether merely preparing a false statement—as opposed to communicating it—is an essential element of §1014. The government ignores the latter point and seeks to elide the former by claiming that one "default venue rule," Pet.13, 15 n.3, governs all false-statement crimes. That is wrong. Indeed, that approach (unlike the panel's) *would* conflict with Supreme Court precedent, eschewing the statute-specific venue inquiry that the Court has mandated.

Nor does this proceeding involve any question of exceptional importance. The panel applied established precedent and expressly "cabined" its holding to the facts here; its decision implicates no frequently contested issue, let alone an exceptionally important one. Again, the government hardly contends otherwise, asserting (Pet.14-15) only that §1014 covers more than just mortgage fraud and that it is "unduly restrict[ive]" to require prosecution of §1014 charges in the district(s) where false statements were communicated or received. But the government never explains *why* that rule—which has not seemed to hinder prosecutions in the decades it has been the law in this circuit—is so burdensome as to warrant weakening the Constitution's venue right.

The panel's holding that the government challenges is, as noted, one of simple statutory interpretation: whether Congress intended certain conduct to constitute an essential element of a particular offense. There is nothing

- 2 -

exceptionally important about that question; it is the kind courts resolve almost daily.  And the government's desire to further broaden federal criminal law so as to make convicting people easier is not only contrary to the Supreme Court's recent cases deeming that law too capacious already, but also not a sound reason to weaken the fundamental venue right—one so important that the Framers put it in the Bill of Rights even after addressing it in Article III.

The government's petition should be denied.

## STATEMENT

The government's factual recitation (Pet.3-9) contains too many errors and mischaracterizations to catalogue here.  Ms. Mosby addresses only those material to the rehearing request, referring the Court to the panel's decision (pp.4-17) and her opening brief (pp.5-19) for a fuller, accurate recitation of the background.

### A.    Relevant Facts

In 2021, Ms. Mosby closed on a condominium in Florida.  Op.6-9.  Before the closing, her mortgage broker's accounting error left her $5,000 short of the amount needed to satisfy underwriting requirements.  Op.6-7.  He told her the closing could proceed if she submitted a "gift letter" from her then-husband.  Op.7.  The Mosbys thus signed a gift letter stating that Mr. Mosby would make "a gift of $5,000 to be transferred AT CLOSING," JA2747.  Ms. Mosby then traveled to Florida for the closing.  Op.9.

Prosecutors never established (1) where Ms. Mosby was when she either signed or transmitted the gift letter, (2) when she transmitted it, or (3) to whom she did so—although both possible recipients (her broker and lender) were outside Maryland. Op.4, 8-9, 29.

### B. District-Court Proceedings

In addition to two perjury counts that are not relevant to the government's petition, prosecutors charged Ms. Mosby with two counts of mortgage fraud, based on seven allegedly false statements. Op.9-10. At trial, the district court rejected Ms. Mosby's proposed venue instruction: that venue was proper "only in a district in which an essential conduct element of the offense took place," JA241. Instead, over Ms. Mosby's objection, the court gave prosecutors' preferred venue instruction: that they had to prove that "any act in furtherance of the crime occurred within" Maryland, JA2439. Even so instructed, the jury found Ms. Mosby not guilty as to all but one predicate statement: the gift letter. Op.16.

### C. The Panel Decision

Over a dissent by Judge Niemeyer, this Court vacated the mortgage-fraud conviction, holding the district court's venue instruction erroneous and the error not harmless. Op.24-33.

The panel explained that Supreme Court precedent—including *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999)—establishes a two-step test for

"determining where proper venue lies." Op.26. First, courts "identify the conduct" that Congress intended to "constitut[e] the offense," i.e., the offense's "essential conduct" elements. *Id.*; *accord United States v. Cabrales*, 524 U.S. 1, 6-7 (1998). This requires careful analysis of a statute's text to distinguish between genuinely "essential conduct" and conduct that is "anterior," *Cabrales*, 524 U.S. at 7, or "merely 'preparatory' to the underlying offense," *United States v. Sterling*, 860 F.3d 233, 241 (4th Cir. 2017). Second, courts "determine where the criminal conduct was committed." Op.26. Moreover, the panel continued, under cases from this Court and others, only the location of "essential conduct"—as opposed to mere "preparatory conduct"—provides a basis for venue. *Id.* (citing *Sterling*, 860 F.3d at 241, and *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005)).

Applying this test to §1014, the panel held that "[t]he controlling authority to discern the line between essential conduct and mere preparatory conduct," Op.26, was *Reass v. United States*, 99 F.2d 752 (4th Cir. 1938), which analyzed a statutory forebear of §1014 that used materially identical language. *Reass* vacated a conviction obtained in West Virginia because the defendant had merely "assembl[ed]" and "arrange[d]" loan-application materials there before hand-delivering the application in Pennsylvania. *Reass* held those actions in West Virginia "preparatory to the commission of the crime" but "no part of the crime itself," which occurred only when the fraudulent material was "communicated" in

Pennsylvania. *Id.* at 755. Under *Reass*, the panel here held, venue was proper in Maryland only if Ms. Mosby "transmitted" the gift letter "from … Maryland"— and "preparing, filling out, or signing" the gift letter were "[p]reparatory acts" that "do not suffice." Op.29. Based on this analysis, the panel concluded that the district court's venue instruction—"substantially identical" to one the Court disapproved in *United States v. Sterling*—"was erroneous[]" because it "permitted the jury to establish venue" for the §1014 charges "based on mere preparatory acts." *Id.*

Finally, the panel held the error not harmless, partly because the district court (unlike in *Sterling*) had not cured its "act in furtherance" instruction with other instructions, Op.30, and partly because the jury could have found that prosecutors had not proven that "the essential conduct of the offense"—as opposed to mere preparatory acts—"occurred in Maryland," Op.31. Indeed, the panel noted, prosecutors' closing "focused exclusively on impermissible preparatory acts with respect to venue," *id.*—namely, signing the gift letter or transferring funds to (or from) Mr. Mosby's bank accounts.

The panel thus vacated the mortgage-fraud conviction (and, consequently, the district court's related order that Ms. Mosby forfeit the condominium). Op.33-34. In doing so, the panel "emphasize[d]" that its holding was "cabined to the unique circumstances of this case." Op.33.

## ARGUMENT

I.   THE PANEL DECISION IS CORRECT AND DOES NOT CONFLICT (OR CREATE "TENSION") WITH ANY OTHER DECISION

The government asserts that the panel's decision flouts "modern venue principles" and thus creates "tension" with this Court's and other courts' cases. Pet.1; *see* Pet.9-14.  In reality, the decision faithfully applied binding precedent for "determining where proper venue lies," Op.26, and there is no "tension," let alone conflict, with decisions that either involved different statutes or did not address the venue issue here.

### A.   The Panel Correctly Applied The Supreme Court's Venue Precedent And—Like *Reass*—Correctly Interpreted §1014

Contrary to the government's arguments (Pet.9-12), there is no conflict between the panel decision and the Supreme Court's "modern venue principles."

As discussed, the panel applied the Supreme Court's "two step venue inquiry in criminal prosecutions."  Op.26.  The government agrees that that two-step analysis is the "governing test."  Pet.10.  All the government challenges is the *application* of that settled law here.  Specifically, it challenges whether, at step one, the panel correctly "discern[ed] the line between essential conduct and mere preparatory conduct" (Op.26) for §1014, i.e., decided that Congress did not intend a §1014 offense's "essential-conduct elements" (meaning the conduct that can support venue) to include writing/signing a false statement to be delivered later.

By relying on *Reass* to draw that line, the government argues (Pet.9), the panel decision created "tension" with *Rodriguez-Moreno* and other cases applying "modern venue principles."

In actuality, *Reass* aligns with *Rodriguez-Moreno* and other "modern" cases. *Reass* involved a predecessor to §1014, 12 U.S.C. §1441(a) (1934), that likewise criminalized knowingly "mak[ing]" a false statement "for the purpose of influencing" a lender "upon any application" for a loan. *Reass* conducted the very two-step analysis *Rodriguez-Moreno* now demands. First, it identified the "essence of the crime" as "communication of the false statements," meaning the crime occurred only when the statements were "communicated to the lending bank." 99 F.2d at 755. Second, it determined where *that* conduct had occurred: Pennsylvania. *Id.* Thus, the *Reass* defendant's actions in West Virginia—i.e., his "mere assembling of the material"—were "preparatory to the commission of the crime" but "no part of the crime itself." *Id.* Applying *Reass* to §1014's materially identical language, the panel here concluded that the government's venue burden was to prove that Ms. Mosby "transmitted" the gift letter to her Florida-based lender from Maryland, and that "preparing, filling out, or signing" the gift letter were all "[p]reparatory acts" that "d[id] not suffice" to support venue. Op.29.

The government is thus wrong to describe *Reass* (Pet.1, 11) as a "relic" inconsistent with intervening Supreme Court decisions—and so was the decision

from which the government draws that label, *United States v. Brown*, 898 F.3d 636 (5th Cir. 2018). Contrary to *Brown*'s view, *Reass*—as just explained—followed "Supreme Court[] instruction" by considering both the "nature of the crime alleged" (false statements "upon a[] [loan] application") "and the location of the act or acts constituting it" (Pennsylvania), *id.* at 641.

The government nonetheless argues (Pet.11) that *Reass* should be overruled because, as a plain-language matter, one "makes" a false statement not only by "communicat[ing]" it to another but also by "creating or composing" it. That argument improperly plucks out a single phrase in §1014 ("makes any false statement"), ignoring the Supreme Court's oft-repeated instruction to interpret statutory language "'in … context,' not in isolation," *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). Indeed, *Rodriguez-Moreno*—the case the government says exemplifies "modern venue analysis," Pet.9-10—explicitly cautioned against using statutory verbs as "the sole consideration in identifying the conduct that constitutes an offense," explaining that "the 'verb test' … cannot be applied rigidly, to the exclusion of other relevant statutory language," 526 U.S. at 280.

Reading the statute holistically reveals the error in the government's reasoning. The conduct §1014 prohibits is not merely "making any false statement"—although even that in isolation provides little if any support for the

government's preferred reading, because surely if someone wrote a false statement on paper but immediately burned that paper without anyone else ever seeing it, no one (other than the government, apparently) would claim the person had done what Congress meant to criminalize. What is criminalized is "mak[ing]" a false statement "for the purpose of influencing" a lender "upon any application" for a loan. 18 U.S.C. §1014. This additional language confirms that just writing down a false statement does not fall within the statute's scope—that act alone cannot influence anyone—nor is it "upon" an application, because "upon" means "on," Merriam-Webster, *Upon*, https://tinyurl.com/3unznsew (visited Oct. 30, 2025), and "on," in turn, can indicate the "means of *conveyance*," Merriam-Webster, *On*, https://tinyurl.com/3p2bwm27 (visited Oct. 30, 2025) (emphasis added). Section 1014's full text thus confirms what *Reass* concluded: Only when false statements "are communicated to the lending bank," upon a loan application, does the crime occur. 99 F.2d at 755.

The government next claims (Pet.12) that *Reass* improperly performed a "purpose-based analysis" rather than "the conduct-based analysis that is now required" under *Rodriguez-Moreno*. That is incorrect. Although *Reass* (correctly) noted that Congress had enacted the statute there "to protect the Federal Home Loan Banks," 99 F.2d at 755, it unquestionably performed a "conduct-based analysis": It analyzed the text to discern the "essence of the crime" and to

determine what conduct was actually "part of the crime itself"—i.e., to identify the essential-conduct elements—and looked to other decisions "constru[ing] similar statutory language" to bolster and confirm its own textual analysis. *Id.* In any event, the panel *here* assuredly performed a conduct-based analysis. *See supra* pp.7-8. The government does not even claim otherwise.

To the extent the government's gripe is that *Reass* did not ignore §1014's explicit mention of purpose ("purpose of influencing"), that is baseless. Honoring Congress's decision to make a *defendant's* purpose relevant in a criminal statute does not constitute considering "Congress's purpose in forbidding the conduct," Pet.12. Rather, it enforces textual limitations Congress chose to include in the statute—and heeds the Supreme Court's frequent exhortations to "exercise[] restraint in assessing the reach of a federal criminal statute," *Dubin v. United States*, 599 U.S. 110, 129 (2023). Indeed, mere months ago, the Supreme Court—rejecting the government's attempt to again broaden federal criminal law even further—unanimously adopted a narrower construction *of §1014* than the government urged. *See Thompson v. United States*, 604 U.S. 408, 413-417 (2025).

The government also protests (Pet.15) that signing the gift letter was not a preparatory act because, until Ms. Mosby did so, "she had nothing to transmit." That proposed but-for test ignores the very "modern venue principles" the government claims to champion. Indeed, the Supreme Court has distinguished

- 11 -

between the financial transactions actually prohibited by federal money-laundering statutes and the "anterior criminal conduct that yielded the funds allegedly laundered"—a but-for cause of the crime, yet not an essential-conduct element. *Cabrales*, 524 U.S. at 7. The government's but-for test would allow venue to rest on an enormous range of unquestionably preparatory acts.

Finally, the government asks for *Reass* to be overruled without ever mentioning the "bedrock doctrine" of stare decisis, *United States v. Simms*, 914 F.3d 229, 249 (4th Cir. 2019) (*en banc*), much less applying "stare decisis balancing," *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021). Bypassing stare decisis "demands 'special justification'—something more than 'an argument that the precedent was wrongly decided.'" *Kisor v. Wilkie*, 588 U.S. 558, 587 (2019). The government does not even address the traditional stare-decisis factors, much less identify any sufficiently special justification. The government's failure even to utter the words "stare decisis"—which by itself warrants denial of the petition— is especially egregious in a statutory-interpretation case, where the doctrine "carries enhanced force" because Congress remains empowered to "correct any mistake it sees" with judicial interpretations, *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 456 (2015). Here, for example, Congress remains free to add "an express venue provision," *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000), clarifying where prosecutors may charge §1014 offenses.

- 12 -

In short, the panel's ruling was faithful to "modern" (indeed all) Supreme Court precedent, and the conclusion it drew from *Reass* about §1014's essential-conduct elements was correct. And the government makes absolutely no argument that the especially strong form of stare decisis applicable here has been overcome.

## B. There Is No "Tension," Much Less Conflict, With Other Circuit Cases

The government argues (Pet.12-14) that the panel decision and *Reass* create "tension," with either this Court's or other circuits' precedent. That too is wrong.

Within this circuit, the government cites (Pet.12-13) *United States v. Blecker*, 657 F.2d 629 (4th Cir. 1981), and *United States v. Barsanti*, 943 F.2d 428 (4th Cir. 1991). But those cases addressed only whether venue was appropriate in a district that a statement had "passed through"—a context "clearly distinct" from the *Reass* issue raised here, *Blecker*, 657 F.2d at 632-633; *accord Barsanti*, 943 F.2d at 434-435. That alone defeats any conflict claim.

Additionally, although those cases involved "false-statement crimes," the statutes they analyzed are not "analogous" for venue purposes—and neither case establishes a "default venue rule" that applies automatically to all other false-statement crimes, Pet.13. *Barsanti* addressed venue under 18 U.S.C. §1001, which criminalizes knowingly false statements made "*in any matter* within the jurisdiction of any department or agency of the United States" (emphasis added). That language is materially broader than §1014's—which, as discussed,

- 13 -

criminalizes false statements only when made "for the purpose of influencing"
certain entities "upon an[] application" for a loan. As for *Blecker*, it addressed
venue under a statute, 18 U.S.C. §287, criminalizing *either* "mak[ing]" *or*
"present[ing]" false claims to the government, *see Blecker*, 657 F.2d at 632-633.
Interpreting "making" in that statute as communicative would have rendered
"presenting" superfluous, thereby failing to "give effect … to every word Congress
used." *National Association of Manufacturers v. Department of Defense*, 583 U.S.
109, 128-129 (2018). The Court should reject the government's "attempt[] to
sidestep" these distinct statutes' plain language and elide material distinctions
between "false claim and false statement statutes." *United States v. Salinas*, 373
F.3d 161, 166 (1st Cir. 2004).

Nor do the government's out-of-circuit cases help it. Several are not §1014
cases. *See United States v. Clark*, 728 F.3d 622, 625 (7th Cir. 2013) (interpreting
§1001); *United States v. Bilzerian*, 926 F.2d 1285, 1301 (2d Cir. 1991) (§1001)
(same); *United States v. Jones*, 231 F.3d 508, 516 (9th Cir. 2000) (§924(a)(1)(A)).
Again, the fact that courts have reached different conclusions about venue when
analyzing materially different statutes is unremarkable—and establishes no
"tension" (Pet.12), let alone a conflict that could justify rehearing.

As for its §1014 cases, the government incorrectly states (Pet.14) that "every
other circuit to define venue for §1014 crimes has held that it lies both where the

- 14 -

false statement was 'prepared' and where it was 'received.'"  In fact, like the panel here, other circuits have deemed venue proper in a district from which a false statement was *communicated*—not where mere preparation occurred.  Some have stated that venue is proper where a false statement is prepared *and* mailed, without squarely addressing whether preparation alone is sufficient.  *See United States v. Wuagneux*, 683 F.2d 1343, 1356-1357 (11th Cir. 1982); *United States v. Ruehrup*, 333 F.2d 641, 643 (7th Cir. 1964).  That includes *United States v. Greene*, 862 F.2d 1512 (11th Cir. 1989).  Although "*Greene* … is at best opaque," *United States v. Katzoff*, 268 F.Supp.2d 493, 498 (E.D. Pa. 2003), it held venue proper where the defendant both had "completed the false application" *and* from where he had "communicated" with a recipient, *Greene*, 862 F.2d at 1516.  In other words, more than preparation occurred there.

Finally, the government cites (Pet.2, 14) two cases in which the supposedly conflicting (or tension-creating) language is dicta.  What those cases actually *held*—as *Reass* did—was that venue was proper in districts where bank officials received false statements.  *See United States v. Angotti*, 105 F.3d 539, 542 (9th Cir. 1997); *United States v. Zwego*, 657 F.2d 248, 251 (10th Cir. 1981).

Stated simply, the government cites not a single §1014 case holding, contrary to *Reass* and the panel here, that the government may establish venue

*solely* by proving that statements were prepared in (i.e., not communicated from) a district. There is no conflict (or, if it mattered, even "tension").

## II. THE PANEL'S VENUE-INSTRUCTION HOLDING IMPLICATES NO QUESTION OF EXCEPTIONAL IMPORTANCE

The government's claim that the panel's decision implicates a question of exceptional importance lacks merit. The government's perfunctory argument (Pet.14-15) is that venue is important and that available venues should not be "unduly restricted." But the question is not whether venue is important *generally*. It certainly is—which is why, as elaborated below, the government's attempt to restrict the constitutional venue right is so misguided. But if the general importance of venue were the test, every venue case would warrant en banc review. The issue is instead whether the panel's mortgage-fraud vacatur creates any exceptionally important questions. The government offers no sound argument that it does.

More specifically, the government argues (Pet.14-15) that (1) §1014 covers various types of false statements and (2) restricting the venues prosecutors can pick when seeking convictions is inherently bad. The first argument does nothing to show that any issue here arises often—as the government is evidently suggesting in hopes of making the issue appear broadly significant—and that notion is belied by three points: Many of the government's supposedly "conflicting" cases are decades old; *Reass* was last cited by this Court (before the panel's decision) nearly

- 16 -

*35 years* ago; and in the last decade, only one other decision in this circuit
addressed venue in *any* §1014 prosecution, *see Eggleston v. Surgey*, 2025 WL
2803608, at *8 (E.D. Va. Sept. 17, 2025), *R&R adopted*, 2025 WL 2803604 (E.D.
Va. Oct. 1, 2025).  As for the government's second argument, it is a surprising
one—even putting aside that it would make every pro-defendant venue ruling
worthy of rehearing en banc.  The Framers were preoccupied with "[p]roper venue
in criminal proceedings," *Cabrales*, 524 U.S. at 6, addressing it in both Article III
(§2, cl.3) and the Sixth Amendment.  The panel's decision properly vindicates
those "constitutional commands" respecting a right that the Constitution "twice
safeguards." *Cabrales*, 524 U.S. at 6.  The government's desire for the full Court
to derogate that right creates no issue of exceptional importance.

The facts of this case underscore the importance of enforcing the Framers'
concern about prosecutorial overreach on venue, and the panel's correctness in
doing so.  Maryland prosecutors chose to bring charges there even though the
manifestly obvious venue was Florida—where the mortgage broker and relevant
property were located, and where the closing and mortgage execution occurred,
Op.4-9.  It was "uncontested" that "no direct evidence" showed Ms. Mosby
"transmitted the Gift Letter" to her lender from Maryland, Op.32, and likewise
uncontested that no one received her letter in Maryland.  Whatever the reasons for
Florida prosecutors' choice *not* to bring any charges there, a prosecution so far

- 17 -

from what circumstances strongly suggest was the natural venue is at the heart of

what the Framers sought to prevent by twice enshrining the venue right in the

Constitution.  Again, the government's desire to undermine that repeated textual

constitutional protection does not remotely warrant an expenditure of the full

Court's resources.

## CONCLUSION

Consistent with the fact that "[r]ehearing en banc is not favored," Fed. R.

App. P. 40(c), the government's petition for rehearing should be denied.

October 30, 2025

Respectfully submitted,

/s/ Daniel S. Volchok

JAMES WYDA
MAGGIE GRACE
OFFICE OF THE FEDERAL
    PUBLIC DEFENDER
100 S. Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962


PARESH S. PATEL
CULLEN O. MACBETH
OFFICE OF THE FEDERAL
    PUBLIC DEFENDER
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

DANIEL S. VOLCHOK
CARRIE M. MONTGOMERY
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

ALAN SCHOENFELD
CHARLES C. BRIDGE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800

NITISHA BARONIA
WILMER CUTLER PICKERING
    HALE AND DORR LLP
50 California Street, Suite #3600
San Francisco, California 94111
(628) 235-1000

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(2)-(4) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the brief contains 3,897 words, excluding the portions exempted by Rule 32(f).

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

## CERTIFICATE OF SERVICE

On this 30th day of October, 2025, I electronically filed the foregoing using the Court's appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK